**In the Matter of Emanuel JOSEPHSON, Petitioner.**

**No. 4854.**

United States Court of Appeals, First Circuit.

Dec. 23, 1954.

Herbert B. Ehrmann, Boston, Mass., with whom Marvin Sparrow and Goulston & Storrs, Boston, Mass., were on brief, for petitioner.

Arthur M. Gilman, Swampscott, with whom George A. McLaughlin, Walter H. McLaughlin and Charles S. McLaughlin, Boston, Mass., were on brief, for John A. McGuire et al., intervenors.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

We have before us a petition asking for a writ of mandamus (1) directing Hon. Charles E. Wyzanski, Jr., a judge of the United States District Court for the District of Massachusetts, to vacate an order entered April 23, 1954, under authority of 28 U.S.C. § 1404(a), transferring a suit then pending before him to the

United States District Court for the District of New Mexico, and (2) directing Judge Wyzanski to deny the motion for transfer made by defendants in such suit.

The case began by the filing in the United States District Court for the District of Massachusetts of a complaint in the nature of a typical minority stockholder's derivative suit, charging various breaches of fiduciary duties which the defendant directors owed to their corporation. This complaint was filed by the present petitioner, Emanuel Josephson, described as a citizen of New York and a shareholder in New Mexico Potash & Chemical Company, Inc., a New Mexico corporation "with its principal office and a usual place of business" in Lowell, Mass. It was stated to be filed on behalf of the named plaintiff and all other stockholders of the corporation "similarly situated who might desire to join in the suit and contribute to the expenses thereof." Named as defendants were the New Mexico corporation and three individuals, John A McGuire, Max J. Cohen, and Catherine M. Kennedy. The three individual defendants were described as being each a citizen of Massachusetts and a director of defendant corporation. It was further alleged that the individual defendants collectively hold a controlling stock interest in the defendant corporation, which was subject entirely to their domination and control. Federal jurisdiction was stated to be based upon diversity of citizenship and the fact that the matter in controversy exceeded $3,000 exclusive of interest and costs.

Service of process in Massachusetts was made upon all of the defendants. The district judge found that McGuire, Cohen and Kennedy were each domiciled in Massachusetts.

A motion under 28 U.S.C. § 1404(a) was filed in the district court by the defendant corporation and by defendants Cohen and Kennedy seeking to have the case transferred to the United States District Court for the District of New Mexico, or, in the alternative, to the United States District Court for the Northern District of Texas, Dallas Division. Defendant McGuire did not join in the motion to transfer, but a formal offer was filed in the district court on behalf of all four defendants that, in the event of the transfer of the case as requested, "the personal appearance of all of the defendants herein will be entered in this forum now, or in the forum to which the cause may be transferred", and further that all of said defendants waive "any question of venue or of the jurisdiction of the court to which said action is removed over the defendants or either of them." Also, counsel for defendants undertook, in the event of transfer of the case to New Mexico, to enter an appearance there for two related corporations "if their presence as a party hereto is necessary or desirable, in order to enable the court to fully and effectually enforce any lawful decree entered herein." (At the oral argument before this court, counsel for the defendants added the assurance that the individual defendants would make themselves available as witnesses in New Mexico if desired.) After hearing on the motion to transfer, the district judge granted the same in the exercise of what he conceived to be the discretion confided to him by 28 U.S.C. § 1404(a) and entered the order of transfer now sought to be reviewed in this mandamus proceeding. A memorandum filed by the district judge explains his reasons for concluding that it would be for the convenience of the parties and witnesses and in the interest of justice to transfer the cause to the District of New Mexico. 121 F.Supp. 83.

■ It is conceded by petitioner that the order of transfer is not a "final decision" within the meaning of 28 U.S.C. § 1291. Jiffy Lubricator Co., Inc. v. Stewart-Warner Corp., 4 Cir., 1949, 177 F.2d 360, certiorari denied, 1950, 338 U.S. 947, 70 S.Ct. 484, 94 L.Ed. 584; Ford Motor Co. v. Ryan, 2 Cir., 1950, 182 F.2d 329, certiorari denied, 1950, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624; Clinton Foods, Inc. v. United States, 4 Cir., 1951, 188 F.2d 289. Also, the order

of transfer is obviously not one of those exceptional classes of interlocutory orders immediately appealable to the courts of appeals under 28 U.S.C. § 1292. Therefore the order in question is not now reviewable by us on appeal, in the exercise of our ordinary appellate jurisdiction.

Consequently, petitioner asks us now to review this unappealable order by the device of an extraordinary writ under the so-called all writs section of the Code, 28 U.S.C. § 1651(a), reading: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Petitioner filed with us a motion for leave to file a petition for a writ of mandamus or alternative writ. We granted such leave to file, and issued to the district judge an order to show cause why a writ of mandamus should not be issued as prayed. Of course the district judge is really only nominally the respondent in such a proceeding. We granted leave to the defendants in the minority stockholder's suit to intervene in the present proceeding and to file a brief and present oral argument in opposition to the petition and in support of the action of the district judge.

Though the district judge has not, so far as appears, entered a formal stay of his order of transfer, pending the disposition of this mandamus proceeding, we understand that the papers in the case are still physically in the office of the Clerk of the District Court for the District of Massachusetts; and therefore there is no suggestion that the present proceeding before us has become moot by the actual transfer of the case to the District of New Mexico in execution of the order. Cf. Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., 2 Cir., 1950, 178 F.2d 866, 868; Hart & Wechsler, The Federal Courts and the Federal System (1953) p. 981, note 8.

■ This court has had occasion recently to set forth what it regards as the very decided limitations upon its authority under 28 U.S.C. § 1651. In re Chappell & Co., Inc., 1 Cir., 1953, 201 F.2d 343; In re Previn, 1 Cir., 1953, 204 F.2d 417. We adhere to what we said in those cases. Contrary to the view which seems to have been occasionally taken, or at least *sub silentio* assumed, in other courts of appeals, we do not think that 28 U.S.C. § 1651 grants us a general roving commission to supervise the administration of justice in the federal district courts within our circuit, and in particular to review by a writ of mandamus any unappealable order which we believe should be immediately reviewable in the interest of justice.

■ 28 U.S.C. § 1651 does not refer specifically to a writ of "mandamus". But no doubt there are occasions when a court of appeals under the all writs section may issue to a lower court an order, perhaps loosely designated as a writ of mandamus, in aid of its statutory appellate jurisdiction the exercise of which might otherwise be frustrated by unauthorized action of the district court. See McClellan v. Carland, 1910, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762. But such a writ or order is not the same as the ancient prerogative writ of mandamus, familiar to the English common law, issuable only by the King's Bench in its exercise, in the name of the king, of the general supervisory power over all inferior jurisdictions and officers. See Smith v. Jackson, 1825, Fed.Cas.No. 13,064, 1 Paine 453, 455. As the Court pointed out in Kendall v. United States ex rel. Stokes, 1838, 12 Pet. 524, 620, 9 L.Ed. 1181, the writ of mandamus, as it is used in the courts of the United States, "cannot, in any just sense, be said to be a prerogative writ, according to the principles of the common law." See also the discussion of the common law writ by Chief Justice Taney, dissenting, in the same case, 12 Pet. at page 628 et seq.

The first Congress did undertake to confer upon the Supreme Court of the United States a general supervisory power over the inferior courts, so far as this power was exercisable through a writ of mandamus in its historic func-

tion. In § 13 of the Judiciary Act of 1789, 1 Stat. 81, the Supreme Court was empowered, among other things, to issue "writs of *mandamus*, in cases warranted by the principles and usages of law, to any courts appointed, or persons holding office, under the authority of the United States." Marbury v. Madison, 1803, 1 Cranch 137, 2 L.Ed. 60, held this attempted grant of power to the Supreme Court to be unconstitutional, in part only, *i. e.*, in so far as it purported to authorize the Supreme Court to issue an original writ of mandamus addressed to an officer of the United States, such as the Secretary of State. As so applied, the Court thought that the Congress was attempting to enlarge the categories of cases in which the Supreme Court had original jurisdiction beyond those specified in the Constitution. Chief Justice Marshall recognized that the Congress could define the exercise of appellate jurisdiction by the Supreme Court and provide that that appellate power might be exercised through a writ of mandamus, a writ of error, an appeal, or any other procedure deemed appropriate. He said, 1 Cranch at page 175:

> "It has been stated at the bar, that the appellate jurisdiction may be exercised in a variety of forms, and that if it be the will of the legislature that a *mandamus* should be used for that purpose, that will must be obeyed. This is true, yet the jurisdiction must be appellate, not original. It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. Although, therefore, a *mandamus* may be directed to courts, yet to issue such a writ to an officer, for the delivery of a paper, is, in effect, the same as to sustain an original action for that paper, and therefore, seems not to belong to appellate, but to original jurisdiction."

After Marbury v. Madison, the Supreme Court continued to recognize that the foregoing provision of § 13 of the Judiciary Act of 1789 was still good to authorize that Court to exercise the essentially appellate function of reviewing and revising a judicial proceeding in a lower court by appropriate use of the common-law writ of mandamus, whether or not it had been given by Congress some other statutory appellate jurisdiction, or potential appellate jurisdiction, by way of an appeal or writ of error or otherwise. See Ex parte Bollman, 1807, 4 Cranch 75, 100, 2 L.Ed. 554; United States v. Peters, 1809, 5 Cranch 115, 3 L.Ed. 53; Parker v. Judges of Circuit Court of Maryland, 1827, 12 Wheat. 561, 6 L.Ed. 729; Ex parte Crane, 1831, 5 Pet. 190, 8 L.Ed. 92; Ex parte Bradley, 1868, 7 Wall. 364, 19 L.Ed. 214.

Rev.Stat. § 688 (1873) provided:

> "The Supreme Court shall have power to issue * * * writs of mandamus, in cases warranted by the principles and usages of law, to any courts appointed under the authority of the United States, or to persons holding office under the authority of the United States, where a State, or an embassador, or other public minister, or a consul or vice-consul is a party."

At the same time the provision of § 13 of the Judiciary Act of 1789, above referred to, was repealed. Rev.Stat. § 5596.

The added phrase in Rev.Stat. § 688, "where a State, or an embassador, or other public minister, or a consul or vice-consul is a party", was evidently inserted by the Congress in deference to the decision in Marbury v. Madison, supra, so as to confine the issuance of a writ of mandamus to public officers to those cases within the original jurisdiction of the Supreme Court, as conferred by the Constitution. This added language was not intended to limit the independent appellate power of the Supreme Court over "any courts appointed under the authority of the United States," so far as that appellate power might be exercised through the procedure of the historic writ of mandamus. This at any rate was the construction which the Supreme Court consistently put upon Rev.

Stat. § 688. See State of Virginia v. Rives, 1879, 100 U.S. 313, 323–324, 329–330, 25 L.Ed. 667; In re Green, 1891, 141 U.S. 325, 12 S.Ct. 11, 35 L.Ed. 765; American Construction Co. v. Jacksonville, etc., Ry. Co., 1892, 148 U.S. 372, 379, 13 S.Ct. 758, 37 L.Ed. 486; Ex parte Wisner, 1906, 203 U.S. 449, 27 S.Ct. 150, 51 L.Ed. 264; In re Winn, 1909, 213 U.S. 458, 465–466, 29 S.Ct. 515, 53 L.Ed. 873.

In enacting § 234 of the Judicial Code in 1911, 36 Stat. 1156, Congress continued, without change, this special appellate power of the Supreme Court of the United States, by way of the writ of mandamus, over "any courts appointed under the authority of the United States"; and Rev.Stat. § 688 was formally repealed by § 297, 36 Stat. 1168. Section 234 of the Judicial Code appeared thereafter as § 342 of the earlier editions of Title 28 of the United States Code.

When Congress came to codify Title 28 in 1948, it enacted in § 1651(a) thereof the so-called all writs provision, applicable not only to the Supreme Court but also to "all courts established by Act of Congress". The Reviser's Notes to § 1651 state that the special provisions of § 234 of the Judicial Code with reference to the power of the Supreme Court to exercise appellate jurisdiction, by way of a writ of mandamus, over inferior federal courts, "were omitted as unnecessary in view of the revised section." Section 234 of the Judicial Code was expressly repealed, 62 Stat. 996. Thus it seems that since 1948 Congress has withdrawn from the Supreme Court its special appellate power to supervise proceedings in the lower federal courts by means of the writ of mandamus; so that all federal courts, including the Supreme Court, are now limited to the issuance of "all writs necessary or appropriate in aid of their respective jurisdictions".

Alongside the provision in § 13 of the Judiciary Act of 1789, above referred to, which was a special grant of power to the Supreme Court alone, was § 14, 1 Stat. 81, empowering the circuit and district courts of the United States, as well as the Supreme Court, to issue "writs of *scire facias, habeas corpus,* and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law." This provision of § 14 was the precursor of the present-day all writs section. It was carried forward in substance, in Rev.Stat. § 716 and thence into § 262 of the Judicial Code of 1911, 36 Stat. 1162, and finally, in 1948, into § 1651(a) of the codified Title 28 U.S.C., 62 Stat. 944.

We have been at pains to trace out the subsequent history of these provisions in §§ 13 and 14 of the Judiciary Act of 1789, in order to point up the caution that decisions of the Supreme Court of the United States, at least prior to 1948, supporting the issuance, *by that Court,* of a writ of mandamus directed to a lower federal court, may not safely be relied upon by an intermediate court of appeals as authority for the issuance by the latter court of a writ of mandamus directed to a district court within the circuit. The reason is that the Supreme Court might have been exercising a different sort of power from the strictly auxiliary power given to us under the all writs section.

This caution is well illustrated by the case of Ex parte Republic of Peru, 1943, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014. There a libel in rem was filed in the United States District Court for the Eastern District of Louisiana against the Ucayali, 47 F.Supp. 203. The Republic of Peru, claiming the vessel as its own, and thus as being immune from such suit, moved in the district court for dismissal of the libel. The district court denied this motion to dismiss. Petitioner thereupon directly applied to the Supreme Court of the United States for a writ of mandamus requiring the district court to enter an order in the proceeding declaring the vessel immune from suit. The Supreme Court held that the public importance of the case, and the high policy of preserving our good

relations with a friendly power, justified the immediate exercise by the Supreme Court of its supervisory power over the proceeding in the district court.

But we apprehend that it by no means follows that the Circuit Court of Appeals for the Fifth Circuit would have been empowered to issue a similar writ directed to the district court. The order of the district court denying the motion to dismiss the libel was of course merely interlocutory; it was not by Congress made appealable to the circuit court of appeals, however strong may have been the considerations in the particular case favoring immediate appellate review of the interlocutory order. The only jurisdiction of the circuit court of appeals, which that court would have been entitled to "aid" by the issuance of an extraordinary writ, was its potential appellate jurisdiction over a "final decision" of the district court in the pending proceeding. The order of the district court refusing to dismiss the libel in no way tended to frustrate or impede the ultimate exercise by the circuit court of appeals of this appellate jurisdiction to review a final decision in the cause. If the circuit court of appeals had undertaken in that case, by the issuance of a writ of mandamus, to review the correctness of the unappealable interlocutory order of the district court refusing to dismiss the libel, it would have been doing what the Supreme Court warned against in McClung v. Silliman, 1821, 6 Wheat. 598, 601, 5 L.Ed. 340, where, referring to § 14 of the Judiciary Act of 1789, the earliest version of what is now 28 U.S.C. § 1651 (a), the Court said that that section "could only have been intended to vest the power now contended for, in cases where the jurisdiction already exists, and not where it is to be courted or acquired, by means of the writ proposed to be sued out." The all writs section does not confer an independent appellate power; the power is strictly of an auxiliary nature, in aid of a jurisdiction granted in some other provision of law, as was sharply pointed out in Roche v. Evaporated Milk

Ass'n, 1943, 319 U.S. 21, 29–31, 63 S.Ct. 938, 87 L.Ed. 1185.

As another illustration of the need of caution by courts of appeals in applying Supreme Court precedents in this general field, we may refer to Ex parte Simons, 1918, 247 U.S. 231, 38 S.Ct. 497, 62 L.Ed. 1094, which case we do not regard as militating against the conclusion we reached as to our own lack of power in the case of In re Previn, 1 Cir., 1953, 204 F.2d 417.

With these general observations out of the way, we come now to the more particular situation presented in the case at bar.

■ In permitting the present mandamus proceeding to be initiated, we have given little or no weight to one consideration advanced by petitioner, *viz.*, that unless the transfer order is reviewed now by us it will as a practical matter never be reviewed at all. Maybe this is so. There is nothing in § 1651(a) to suggest that Congress contemplated having the transferee court sit in review upon the order of the coordinate district court which transferred the case. Suppose, then, that the transferee court, having jurisdiction of the subject matter, proper venue, and jurisdiction over the persons of the defendants, should proceed to try the case and finally enter judgment for the defendants. In that event, it is difficult to see how the Court of Appeals for the Tenth Circuit, on appeal by the plaintiff, could vacate the judgment of the district court, if it were otherwise free of error, merely on the ground that the case should not have been transferred to the District of New Mexico. Reversal by the Tenth Circuit in such a situation, after a full trial in other respects free of error, would seem to require the District Court in New Mexico to send the case back to the District of Massachusetts for trial all over again—a result which would certainly make an administrative mess of a section of the Code intended to serve the interests of convenience and expedition. Compare Bankers Life & Casualty Co. v.

Holland, 1953, 346 U.S. 379, 74 S.Ct. 145, which, however, involved a transfer under 28 U.S.C. § 1406. Also, in that case petitioner conceded that the court of appeals in the transferee district could review the transfer order on appeal from a final judgment, supra, 346 U.S. at page 381, 74 S.Ct. at page 145. But assuming that if the transfer order is ever to be reviewed it must be now, we do not forget that appellate review is not of the essence of due process. See McKane v. Durston, 1894, 153 U.S. 684, 687, 14 S.Ct. 913, 38 L.Ed. 867. Particularly, there may be strong reasons of policy why litigation should not be delayed by appellate review of an administrative order of the sort here involved. It is not unlike an order by a federal district court remanding a case to the state court from which it had been removed. Here Congress has specifically provided that such an order "is not reviewable on appeal or otherwise." 28 U.S.C. § 1447 (d), as amended. In certain situations, the fact that a prejudicial order unless presently reviewable can never be corrected on appeal may be a consideration bearing on whether the order is to be deemed a "final decision" from which an appeal may be taken under 28 U.S.C. § 1291. See Cobbledick v. United States, 1940, 309 U.S. 323, 328–330, 60 S.Ct. 540, 84 L.Ed. 783. But we do not have such a situation here, since it is conceded that the transfer order now in question is an unappealable interlocutory order.

If the district judge had held on to the case, i. e., had denied the motion for transfer, such action would have preserved, not frustrated, any potential appellate jurisdiction which we might have had; and we are at a loss to understand how we could properly review on mandamus an order denying a transfer, on the pretense that such a review would be in "aid" of our appellate jurisdiction. But see Ford Motor Co. v. Ryan, 2 Cir., 1950, 182 F.2d 329, certiorari denied, 1950, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624; Paramount Pictures, Inc., v. Rodney, 3 Cir., 1951, 186 F.2d 111, certiorari denied, 1951, 340 U.S. 953, 71 S.Ct. 572, 95 L.Ed. 687.

■ Here, however, Judge Wyzanski granted the order of transfer. Assuming, as petitioner asserts, the invalidity of the order transferring the case to a district outside the circuit, the effect of the order is that the district judge has declined to proceed with the determination of a case which could eventually come to this court by appeal from a "final decision". Therefore we have no doubt that we have power under 28 U.S.C. § 1651(a), in aid and protection of our potential appellate jurisdiction, to review the order of transfer in this mandamus proceeding.*

Though such transfer orders have become increasingly the subject of review on mandamus in other circuits, this is the first time we have had occasion to consider the scope and application of § 1404(a) in a mandamus proceeding. We thought we ought to consider, after full argument, what our general policy should be in dealing with applications of this sort. Accordingly, we entered an order giving leave for the filing of a petition for a writ of mandamus in this case.

The district judge rested his order of transfer upon the authority of 28 U.S.C. § 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Petitioner contends, broadly, (1) that the District of New Mexico is not a district where the civil action "might have

* We need not decide whether the same would be true if the district judge had transferred the case to another district within the First Circuit. Then the question would have been whether the "jurisdiction" of this court, which we are empowered to "aid", is our potential jurisdiction to review the case, from whatever district court within the circuit it is appealed, or whether it is our potential jurisdiction to review a final decision in the case by the District Court for the District of Massachusetts. Compare Carr v. Donohoe, 8 Cir., 1953, 201 F.2d 426; Shapiro v. Bonanza Hotel Co., Inc., 9 Cir., 1950, 185 F.2d 777.

been brought", within the meaning of § 1404(a), and therefore that, no matter how much the convenience of the parties might be served by the transfer to such district, Judge Wyzanski was without power to make the transfer, and (2) assuming that New Mexico was a district in which the suit "might have been brought", the determination of the district judge to make the transfer, in the circumstances presented, was an abuse of discretion.

As to the second of these contentions, that the order of transfer was an "abuse of discretion" under the circumstances, we are clear that as a matter of general policy we ought not to go into that in the present proceeding. "Abuse of discretion" is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. One is reminded of the "clearly erroneous" standard in Rule 52 (a) of the Federal Rules of Civil Procedure, 28 U.S.C. Petitions under § 1651(a) are addressed to our discretion. We do not think that the predominant consideration governing our decision whether to issue the extraordinary writ of mandamus should be that at all costs we must prevent the transfer out of the circuit of every single case that ought to remain here subject to our potential appellate jurisdiction. No doubt upon occasion a district court within this circuit may make an error of judgment in transferring a case to a district outside the circuit. So, too, a district court outside our circuit may on occasion make a similar error of judgment in transferring a case to a district court within this circuit. We do not anticipate that, on balance, our potential appellate jurisdiction will suffer any significant impairment. On the other hand, § 1404(a) provided an administrative facility that was supposed to contribute to convenience and expedition in the disposition of cases. This policy would certainly be defeated if the courts of appeals in the transferor districts should make it a routine practice to hold up the trial of a case pending review on mandamus of the question where the case ought to be tried. In this connection we associate ourselves fully with the comments of Judge Goodrich in All States Freight, Inc., v. Modarelli, 3 Cir., 1952, 196 F.2d 1010, 1011–1012:

"The second danger which threatens the usefulness of Section 1404 (a) comes from the appellate courts. It is settled in this Circuit and elsewhere that an order either making a transfer or refusing a transfer is not appealable. Now the effort is being made both in this court and elsewhere to substitute for appeal a review by mandamus whenever the losing party on a motion to transfer wants an advance review of the ruling on this point.

"We think that this practice will defeat the object of the statute. Instead of making the business of the courts easier, quicker and less expensive, we now have the merits of the litigation postponed while appellate courts review the question where a case may be tried.

"Every litigant against whom the transfer issue is decided naturally thinks the judge was wrong. It is likely that in some cases an appellate court would think so, too. But the risk of a party being injured either by the granting or refusal of a transfer order is, we think, much less than the certainty of harm through delay and additional expense if these orders are to be subjected to interlocutory review by mandamus.

[4]"We do not propose to grant such review where the judge in the district court has considered the interests stipulated in the statute and decided thereon. * * *

"We realize that the view we express is not the one which some of our judicial brethren are following with regard to this statute. But we cannot escape the conclusion that it will be highly unfortunate if the result of an attempted procedural improvement is to subject parties to two lawsuits: first, prolonged litigation to determine the place where a case is to be tried; and, second, the merits of the alleged cause of action itself."

Accordingly, we serve notice that in the future, except in really extraordinary situations the nature of which we shall not undertake to formulate in advance, we shall stop such mandamus proceedings at the very threshold, by denying leave to file the petition for a writ of mandamus.

With regard to petitioner's contention that there was no power to make the transfer because the District of New Mexico is not a district where the suit "might have been brought", within the meaning of § 1404(a), petitioner was somewhat embarrassed by a sentence in the memorandum of the district judge: "All parties concede that the Court has power and all are agreed as to the corpus of principles properly applicable to the exercise of discretion." 121 F.Supp. at page 84. A stipulation of the parties, subsequently filed with the assent of the district judge, recited that the position which the plaintiff took in the district court as to the power of the district judge to make the transfer was substantially as follows: "That the law has not yet been settled, but seemed to be trending in the direction of permitting transfer to a district in which none of the individual defendants would originally have been amenable to service, provided venue was proper and the defendants offered to appear in such District Court if the case were transferred to it." In the argument before us, petitioner asserted that we should rule, as a matter of first impression, that the District of New Mexico was not a district in which the suit "might have been brought" within the meaning of the transfer section.

In the present case we understand petitioner to concede, and rightly so, that jurisdiction of the subject matter of the suit, and proper venue, exist both in the federal court for the District of Massachusetts and in the federal court for the District of New Mexico. The two districts have jurisdiction of the subject matter under 28 U.S.C. § 1332(a)(1), since the case is one between citizens of different States, and involves more than $3,000. As to venue, 28 U.S.C. § 1391(a) provides that a civil action founded on diversity of citizenship alone "may * * * be brought only in the judicial district where all plaintiffs or all defendants reside." It has been found below that the three individual defendants reside in Massachusetts. As to the defendant corporation, 28 U.S.C. § 1391(c) provides that a corporation may be sued wherever it "is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." Although from the record it is not clear that the defendant corporation is "doing business" in Massachusetts, this point though raised was not litigated below and is not before this court. Venue in the District of Massachusetts could equally well be rested upon the provision of 28 U.S.C. § 1401 that, "Any civil action by a stockholder on behalf of his corporation may be prosecuted in any judicial district where the corporation might have sued the same defendants." The corporation as a citizen of New Mexico could have brought suit in the District of Massachusetts against the three individual defendants as residents of Massachusetts. Equally well, under the same provision of 28 U.S.C. § 1401, so far as the requirements of venue are concerned, the corporation as a citizen of New Mexico could have brought suit in the District of New Mexico against the three individual defendants, all citizens of Massachusetts. See Schoen v. Mountain Producers Corp., 3 Cir., 1948, 170 F.2d 707, 713, 5 A.L.R.2d 1226, cer-

tiorari denied, 1949, 336 U.S. 937, 69 S.Ct. 746, 93 L.Ed. 1095.

In ascertaining the meaning of the phrase "where it might have been brought" as used in 28 U.S.C. § 1404(a), it is relevant to note that § 1404 is placed in a chapter dealing with venue in United States district courts, and that in most of the sections preceding § 1404 proper venue in various situations is expressed by saying that the action "may be brought" or "shall be brought" or "must be brought" in such and such a district. See §§ 1391, 1392(a) and (b), 1393(a) and (b), 1396–99, 1400(b), 1403. In fact the very caption of § 1404 is "Change of venue". Section 1401 provides that a civil action by a stockholder on behalf of his corporation "may be prosecuted" in any judicial district where the corporation might have sued the same defendant. According to the Reviser's Notes, this provision was derived from 28 U.S.C. § 112 (1940 ed.), which used the phrase "may be brought"; but the Reviser's Notes do not indicate that the change to the phrase "may be prosecuted" had any substantive significance, and we don't suppose that it did. Compare § 1395(a) with (d).

■■■ Hence it seems to us that the obvious purpose of the phrase "where it might have been brought", as used in § 1404(a), is to authorize the transfer of a civil action to the district court of any judicial district having jurisdiction over the subject matter and proper venue, provided the transfer is found to be for the convenience of parties and witnesses and in the interest of justice.

In accepting this interpretation of the phrase, we do not mean to imply any doubt as to the correctness of cases like Paramount Pictures, Inc. v. Rodney, 3 Cir., 1951, 186 F.2d 111, certiorari denied, 1951, 340 U.S. 953, 71 S.Ct. 572, 95 L.Ed. 687, and Anthony v. Kaufman, 2 Cir., 1951, 193 F.2d 85, certiorari denied, 1952, 342 U.S. 955, 72 S.Ct. 629, 96 L.Ed. 710, which take the view that § 1404(a) also authorizes transfer to a district not having statutory venue, provided that the defendants, who might object to lack of venue, choose to waive the lack. Long before § 1404(a) was enacted, it was held, under earlier venue statutes providing that an action "may be brought" only in certain districts, that venue requirements might be waived, conferring as they did only a personal privilege for the convenience of litigants, and that when a party chose to waive such privilege the action might not only be brought, it might be maintained, in a district not having statutory venue. See Commercial Casualty Ins. Co. v. Consolidated Stone Co., 1929, 278 U.S. 177, 49 S.Ct. 98, 73 L. Ed. 252; Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd., 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167. Reading § 1404(a) in the light of this settled doctrine, it seems to us altogether proper to hold that a case may be transferred to a district not having statutory venue provided the defendant or defendants for whose benefit the venue privilege is conferred agree to waive the same. Such an interpretation indeed is to be favored, since it tends to enhance the usefulness of this important provision for administrative transfer of cases in the interest of convenience and justice.

Petitioner asks us to read the phrase "where it might have been brought" in a much more restrictive sense. His argument is founded upon three propositions: (1) That the Reviser's Notes to § 1404(a) state that it "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper"; (2) that, as stated in Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 506–507, 67 S.Ct. 839, 842, 91 L.Ed. 1055, "In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process * * *." Accord: Tivoli Realty, Inc. v. Interstate Circuit, Inc., 5 Cir., 1948, 167 F.2d 155, 156, certiorari denied, 1948, 334 U.S. 837, 68 S.Ct. 1494, 92 L.Ed. 1762, and (3) that if the individual defendants had been sued in the District of New Mexico, they being domiciled in Massachusetts, the District Court in New Mex-

ico could not have acquired personal jurisdiction over them by the service of process unless they should, perchance, be found within the district. On these premises, petitioner urges that the conclusion follows that a transfer cannot be granted under § 1404(a) to a district in which the defendants were not amenable to process.

Such a gloss was indeed put upon the language of § 1404(a) in Foster-Milburn Co. v. Knight, 2 Cir., 1950, 181 F.2d 949, and in Shapiro v. Bonanza Hotel Co., Inc., 9 Cir., 1950, 185 F.2d 777. These decisions have been criticized, we think justly, in a Note, Curtailing the Scope of 1404(a)—Round Two, 60 Yale L.J. 183 (1951). As Chief Judge Parker pointed out in Jiffy Lubricator Co., Inc. v. Stewart-Warner Corp., 4 Cir., 1949, 177 F.2d 360, certiorari denied, 1950, 338 U.S. 947, 70 S.Ct. 484, 94 L.Ed. 584, the application of the judicial doctrine of forum non conveniens resulted in a final judgment dismissing the action; whereas a transfer order under § 1404(a) does not end the case but preserves it as against the running of the statute of limitations and for all other purposes. Of course it would not be fair to the plaintiff under the doctrine of forum non conveniens to dismiss a complaint filed in the only district where personal jurisdiction over the defendants might be obtained by the service of process. But as the Fourth Circuit goes on to say, 177 F.2d at page 362: "The notion that 28 U.S.C.A. § 1404(a) was a mere codification of existing law relating to forum non conveniens is erroneous. It is perfectly clear that the purpose of this section of the Revised Judicial Code was to grant broadly the power of transfer for the convenience of parties and witnesses, in the interest of justice, whether dismissal under the doctrine of forum non conveniens would have been appropriate or not." To the same effect is All States Freight, Inc. v. Modarelli, 3 Cir., 1952, 196 F.2d 1010, 1011.

Even in the Second Circuit, which seems to have originated this gloss upon § 1404(a), it now appears to be recognized that transfer to a district in which the defendants would not have been originally amenable to process would be all right if the defendants consent to the transfer. See Ford Motor Co. v. Ryan, 2 Cir., 1950, 182 F.2d 329, certiorari denied, 1950, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624; Anthony v. Kaufman, 2 Cir., 1951, 193 F.2d 85, certiorari denied, 1952, 342 U.S. 955, 72 S.Ct. 629, 96 L.Ed. 710; Welch v. Esso Shipping Co., D.C.S.D.N.Y.1953, 112 F.Supp. 611; Mire v. Esso Shipping Co., D.C.S.D.N.Y.1953, 112 F.Supp. 612. That qualification was fully satisfied in the case at bar, since not only have the defendants been served with process in Massachusetts but they have all formally agreed to enter their appearance in the federal court of the transferee district and to waive any question of venue or of the personal jurisdiction of the transferee court over them.

It may be conceded that if, before the plaintiff had effected service of process in Massachusetts upon the individual defendants, the defendant corporation had moved in the district court for a transfer of the case to the District of New Mexico, it would have been improper for the district court, at that stage, to have ordered the transfer. This would have been so, we think, not because the District of New Mexico was not a district where the action "might have been brought", but because it would obviously not have been "in the interest of justice" to transfer the case to a district in which the individual defendants could not be served with process, before the transferor court had obtained personal jurisdiction by the service of process in Massachusetts. Once service of process upon all the defendants has been effectuated in Massachusetts, an order of transfer under § 1404(a) sends the case "as is" to the transferee court, with no need of a new service of process upon the defendants after the case reaches the court in New Mexico. Therefore, in the case before us, it was probably superfluous that the defendants formally waived before Judge Wyzanski any question of personal jurisdiction over them in New Mexico;

for they were already subject to the personal jurisdiction of the United States District Court for the District of Massachusetts by the service of process upon them, and this personal jurisdiction over them was transferred to the United States District Court for the District of New Mexico by the effect of the transfer order.

For the foregoing reasons we are satisfied that Judge Wyzanski had power, under § 1404(a), to transfer the case to the District of New Mexico. As already stated, we do not propose in this proceeding to reweigh the factors which led the district judge to conclude, in the exercise of his discretion, that the transfer was upon the whole for the convenience of the parties and witnesses and in the interest of justice.

A judgment will be entered dismissing the petition for a writ of mandamus.