William McBEE, Petitioner-Appellant,

v.

Lynn BOMAR, Warden, Tennessee State Penitentiary, Respondent-Appellee.

No. 14409.

United States Court of Appeals
Sixth Circuit.

Dec. 4, 1961.

Edward R. Davies, Nashville, Tenn., (Elmer D. Davies; Bailey, Ewing, Davies & Bailey, Waller, Davis & Lansden, Nashville, Tenn., on the brief), for appellant.

Henry C. Foutch, Asst. State Atty. Gen. (George F. McCanless, Atty. Gen., on the brief), for appellee.

Before MARTIN, MAGRUDER and CECIL, Circuit Judges.

MAGRUDER, Circuit Judge.

The appeal in this case is from an order of the United States District Court for the Middle District of Tennessee, Nashville Division, entered on July 1, 1960, dismissing a petition for a writ of habeas corpus and remanding petitioner to the custody of respondent, the Warden of the Tennessee State Penitentiary. Since we think the district court did not give the proper weight to a constitutional right of the petitioner, we are constrained to reverse its order.

Petitioner, a Negro man with a sixth-grade education, whose mental level perhaps is indicated by his belief in the magic of voodoo, is in custody of respondent pursuant to a conviction in the Criminal Court of Knox County, Tennessee, on June 19, 1954, for the capital offense of

murder in the first degree. He was sentenced to life imprisonment.

Petitioner had been out on bail awaiting action by the grand jury. It seems that under the peculiar local practice obtaining in Knox County, the only notice that such an accused or his lawyer receives of his indictment or of the date of his trial is the posting of a notice on the bulletin board in the corridor of the court. Petitioner knew of this practice, and according to his uncontradicted testimony below, he saw his name on the list, and thus became aware of the date of the trial, but misread it to be July 18 rather than June 18, which was the date set on the list.

Petitioner testified that he thought he knew who had committed the crime; that he employed the time before his trial in trying to locate this individual; that it was not until his bondsman on the evening of June 17 told him that he was to face trial on the next day that he learned accurately of the trial date. Thereupon, without success, he attempted to employ counsel. Only a few minutes before his trial began on June 18 he succeeded in getting in touch with Mr. William E. Badgett, a local lawyer.

█ It is agreed that Mr. Badgett was an experienced and able trial lawyer, but at first he declined to serve as petitioner's counsel. The trial judge then announced that petitioner would have to stand trial without counsel. Under the due process clause of the Fourteenth Amendment, petitioner, in a capital case, was entitled to the benefit of counsel. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). This is not a mere formality; the amendment is violated also when the defendant is forced by the state to trial in such a way as to deprive him of the effective assistance of counsel. See Hawk v. Olson, 326 U.S. 271, 276, 66 S.Ct. 116, 90 L.Ed. 61 (1945). See also MacKenna v. Ellis, 280 F.2d 592 (C.A. 5th, 1960); Melanson v. O'Brien, 191 F.2d 963, 968 (C.A. 1st, 1951); Poindexter v. State, 183 Tenn. 193, 191 S.W.2d 445 (1946).

In at least two instances counsel in this case, because of the shortness of the time in preparation, was handicapped so that it cannot be said that petitioner was not prejudiced by the trial judge's action in denying Mr. Badgett's motion for a brief continuance. In the first instance, as part of the defense Mr. Badgett called a witness whom he had not had a chance to consult in advance, namely, one Felton Farmer. This witness proved to be an insane man, who later was committed to an institution. When counsel saw that his testimony was being hurtful to the defense, he tried unsuccessfully to withdraw the witness. Secondly, while the case was pending in the Supreme Court of Tennessee, which affirmed the judgment of conviction on June 10, 1955, it appears that the chief witness for the prosecution, who testified to having been an eyewitness to the murder, came unsolicited to Mr. Badgett's office and there gave him an affidavit to the effect that her conscience had bothered her since the trial. She said: "I do not know the name of the man who fired the shot, but he bears a very close resemblance to William McBee and if I ever see him again I believe I will be able to identify him." It is likely that had experienced counsel been able to consult with this witness before the trial, he would at least have been able to shake her identification of petitioner on cross-examination. See also Melanson v. O'Brien, 191 F.2d 963, 968 (C.A. 1st, 1951).

█ The trial judge denied Mr. Badgett's motion for a continuance, saying that the accused would otherwise have to face trial without counsel. Thereupon Mr. Badgett relented and took the case, at the urgent request of the petitioner. The district court found: "Nevertheless, the fact remains that the attorney representing the petitioner had no substantial time to interview the petitioner or his witnesses or to make any independent investigation or otherwise to prepare the defense of the case." In its opinion the court makes the well-known statement that a motion for continuance is subject to the discretion of the trial judge and

can only be set aside by the reviewing court where there is an "abuse of discretion." " 'Abuse of discretion' is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. One is reminded of the 'clearly erroneous' standard in Rule 52(a) of the Federal Rules of Civil Procedure." In re Josephson, 218 F.2d 174, 182 (C.A. 1st, 1954). It is probable that the trial court would have granted the motion for a brief continuance, to enable counsel to acquaint himself with the facts in the case, had he not been under the impression that the petitioner had "waived" his constitutional right to effective counsel.

The court below thought there was something significant in the fact that the trial judge was not made aware of petitioner's alleged mistake at the time Badgett moved for a continuance. Hence the court appears to have inferred that this excuse was nothing but an afterthought, coming after he had been convicted. In this the court clearly was mistaken, for Badgett testified without contradiction that petitioner informed him of this important fact when first he saw him on June 18.

The district court did not find as a fact that petitioner had not made the alleged mistake in reading the bulletin board. Such a misreading of the bulletin board, as the court conceded, "would have offered a reasonable and logical explanation for petitioner's failure to obtain counsel at an earlier date." Yet whether or not this mistake was made was a matter in which the petitioner had the burden of proof. As the court further stated: "In order to justify the issuance of the writ, the Court must find as a fact that petitioner misread the bulletin board and was taken by surprise when his bondsman contacted him on the evening before the trial. From the evidence pre-

sented, the Court is unable to make such a finding."

[3] Petitioner appealed the conviction of the Criminal Court of Knox County to the Supreme Court of Tennessee. The conviction for the offense of murder was affirmed, the Supreme Court of Tennessee having ruled adversely to the same contention made here, that is, that there was an abuse of discretion on the part of the trial judge in not granting the motion for a continuance. From the judgment of the Supreme Court of Tennessee the petitioner sought unsuccessfully to obtain a writ of certiorari from the Supreme Court of the United States. McBee v. State of Tennessee, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955). We have no doubt that this was a full compliance with the requirement of 28 U.S.C. § 2254, with reference to the exhaustion of remedies by the petitioner The district court had jurisdiction to decide the case. Brown v. Allen, 344 U.S. 443, 447 et seq., 73 S.Ct. 397, 97 L.Ed. 469 (1953).

Though there was no evidence that petitioner had voluntarily and consciously "waived" any constitutional right, the Supreme Court of Tennessee apparently thought that this waiver could be found in the negligence of petitioner in his reading of the bulletin board. Thus the Supreme Court of Tennessee lent countenance to the concept that there might be a negligent waiver of a constitutional right, a concept which we find no authority to sustain. It is not shown that the trial judge made an investigation into the circumstances to determine for himself whether the petitioner had intentionally and competently waived his constitutional right to counsel. See Von Moltke v. Gillies, 332 U.S. 708, 722, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

It is true that the district court did not take too seriously this concept of a "negligent" waiver. The court thought that this element became moot if the petitioner failed to show by a preponderance of proof that he was indeed mistaken in reading the date on the bulletin and was

taken by surprise when he was told by his bondsman that his case was set for trial the following morning. From this failure of the petitioner to maintain what was said to be his burden of proof, the court below concluded "that petitioner's failure to obtain counsel in advance of trial was not the result of his negligence or mistake but was the result of his own decision to wait until the last moment possible to employ counsel." In our opinion the district judge under the circumstances should have found as a fact that petitioner did misread the bulletin board, and he should have found as a fact also that petitioner did not consciously waive any constitutional right to the effective use of counsel.

The judgment of the District Court is vacated and the case is remanded to the District Court with direction to grant petitioner's application for release, unless the prosecution desires to try petitioner again.