**Eli RAITPORT**

v.

**NATIONAL BUREAU OF STANDARDS**
and United States Government.

Civ. A. No. 73–2583.

United States District Court,
E. D. Pennsylvania.

Dec. 18, 1974.

Eli Raitport, pro se.

Paul E. Holl, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Plaintiff, Eli Raitport, instituted this suit for damages and injunctive relief against the United States and one of its agencies, the National Bureau of Standards, alleging that one of the Bureau's departments, the Experimental Technology Incentives Program (ETIP), has been (a) operating illegally, (b) defrauding Congress and the public, (c) engaging in an unlawful duplication of services, (d) mismanaging government funds, (e) conspiring on behalf of private companies to aid monopolistic business, and (f) conspiring to prevent funds from being allocated to small companies in actual or potential competition with monopolistic industry. Raitport's standing to litigate these claims stemmed from ETIP's rejection of his proposal to create a federally sponsored bank to provide loans for technologically oriented small businesses. Jurisdiction is based upon 28 U.S.C. § 1331.[1]

The defendants have moved for summary judgment pursuant to F.R.C.P. 56, contending that there is no genuine issue of fact for trial and that the record clearly discloses that there is no ground for overturning the agency's (ETIP's) action.

In First Penna. Banking and Trust Company v. United States Life Insurance Company, City of New York, 421 F.2d 959 (3d Cir. 1969), reh. denied, December 10, 1969, the test applicable to motions for summary judgment was stated, at page 962:

"Summary judgment may not be granted under the federal rule if there be an issue presented as to existence of any material fact; *and all doubts as to existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment.* Sarnoff v. Ciaglia, 165 F.2d 167 (3 Cir. 1947). Also, in ruling on a motion for summary judgment, the movant not only has the burden of demonstrating clearly the absence of any genuine issue of material fact, but the court shall not draw factual inferences in favor of the moving party, and should not resolve a genuine issue of credibility. Moore's Federal Practice, ¶ 56.7(27) at 2215–2216." (Emphasis added)

See also Associated Hardware Supply Co. v. Big Wheel Distributing Co., 355 F.2d 114 (3d Cir. 1966); Hopewell Township Citizens I–95 Committee v. Volpe, 482 F.2d 376 (3d Cir. 1973), and Burger King Corporation v. Continental Insurance Co., 359 F.Supp. 184 (W.D. Pa.1973).

■ The record in this action includes the pleadings, affidavits, a partial transcript of the hearing on Raitport's motion for preliminary injunction, and a certified copy of the administrative record. This entire record may properly be considered in determining whether to grant a motion for summary judgment. See 6 Moore's Federal Practice ¶ 56.11(1.–8) p. 2147–8 (1972); Langston v. Johnson, 156 U.S.App.D.C. 5, 478 F.2d 915, 918 (1973); Taylor v. Latimer, 47 F.Supp. 236, 237 (W.D.Mo.1942); National Broadcasting Co. v. United States, 47 F.Supp. 940, 946–947 (S.D.

---

1. See the earlier opinion in this case on Raitport's motion for preliminary injunction, 378 F.Supp. 380, 381–382 (E.D.Pa.1974), footnote 2.

N.Y.1942), aff'd 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943); Shulins v. New England Insurance Co., 360 F.2d 781, 785 (2d Cir. 1966); Fletcher v. Bryan, 175 F.2d 716, 717 (4th Cir. 1949).

From the record these facts appear:

ETIP was formed by the National Bureau of Standards [2] in 1972 to fulfill a need, which President Nixon enunciated in his State of the Union Message of that year, to discover more "about the process of stimulating and applying research and development." [3] ETIP's goal was described in the budgetary message for fiscal year 1973 as "initiating a series of experiments to find better ways to encourage private investment in R & D (research and development), including investment by small entrepreneurial R & D firms, which have made significant contributions to the generation and exploitation of innovative ideas . ." [4]

Raitport proposed to ETIP a plan to form a United States Investment Banking Corporation (USIBC) which would finance small entrepreneurs possessing ideas to produce, at lower cost, products used in high volume in this country. In Raitport's view, this aid to small entrepreneurs would spur R & D and fulfill the Presidential directives for this new agency. The administrative record reflects a series of communications between ETIP and Raitport relating to his plan. (Unless otherwise specified, the dates set forth are those appearing on letters in the administrative record.)

1. July 11, 1972, Raitport suggested to Secretary of Commerce Peterson the formation of USIBC. (Tab B-Adm. Record)

2. July 26, 1972, Hudson B. Drake, Deputy Assistant Secretary and Director of the Bureau of Domestic Commerce of the Commerce Department, informed Raitport that his letter was being transmitted to Dr. Harold Glaser, Acting Director of ETIP. (Tab C-Adm. Record)

3. August 25, 1972, Dr. Glaser advised Raitport: "This (USIBC) is an intriguing concept although I do not know, at present, if it would be possible to fit into an Experimental Technology Incentives Program (ETIP) experiment format." (Tab F-Adm. Record)

4. August 31, 1972, Raitport visited with John Evans of ETIP and described his USIBC proposal. (Tab G-Adm. Record)

5. May 16, 1973, ETIP forwarded to Raitport a press bulletin and brochure on the evolving ETIP program. (Tab A-Adm. Record, Bulletin and Brochure)

6. June 4, 1973, Raitport sent to F. Karl Willenbrock, the new Director of ETIP, a copy of a modified USIBC proposal calling for five million dollars in initial funding and a guarantee from the government of 50 million dollars over a period of five to ten years. (Tab H-Adm. Record)

7. June 5, 1973, Raitport informed Willenbrock that a management team had been selected for USIBC. (Tab I-Adm. Record)

8. June 5, 1973, Raitport sent a copy of the modified USIBC plan to Jacob Rabinow, Executive Director of Inventions and Innovations of the U. S. Bureau of Standards. (Tab J-Adm. Record)

9. June 13, 1973, L. F. Barrington, Department of Operations for ETIP, acknowledged receipt of the proposal. (Tab K-Adm. Record)

10. July 6, 1973, Willenbrock, Director of ETIP, advised Raitport that his

---

2. A bureau of the Department of Commerce, acting pursuant to the authority granted under 15 U.S.C. § 272 which provides, in relevant part:

"The Secretary of Commerce . . . is authorized to undertake the following functions:

　　*　　*　　*　　*　　*

　　(f) Invention and development of devices to serve special needs of the Government."

3. Weekly Compilation of Presidential Documents, Vol. 8, No. 4, pp. 66, 91.

4. Weekly Compilation of Presidential Documents, Vol. 8, No. 5, pp. 104, 105.

proposal did not fit the needs of ETIP. He cited the cost as too high (considering ETIP's seven million dollar total allocation), and the ten year total time period for the project as too long, for a unit created to formulate policy recommendations. Willenbrock requested more data concerning (a) firms that might enter the market if a bank were created, (b) the method that would be used to select borrowers and (c) the performance record required to qualify for a loan from the bank. (Tab M-Adm. Record)

11. July 18, 1973, Raitport replied to Willenbrock's July 6 letter stating that hundreds of firms would respond, that marketing and technical investigation would be made of each potential borrower, and listing qualifications for the selection of bank corporation officers. Raitport also stated that the project could be scaled either upward or downward. (Tab R-Adm. Record)

12. August 1, 1973, Willenbrock again rejected the Raitport project because of the large amount of money involved. (Tab S-Adm. Record)

13. August 6, 1973, Raitport commented further on the possibility of adjusting the scale of the proposed bank to fit available government funding. (Tab T-Adm. Record)

14. August 8, 9, 14 and October 16, 1973, ETIP, responding to requests for information concerning disposition of Raitport's USIBC proposal from Senators Humphrey, Domenici, Scott, Schweiker and Kennedy, cited the high cost (Tab Q-Adm. Record, Letters mailed to Senators Humphrey, Domenici, Schweiker and Kennedy), and the limitation upon experiments in policy areas (Tab P-Letter to Senator Scott) as the reasons for rejection.

15. September 6, 1973, Jordan D. Lewis, successor to Willenbrock as Director, advised that no funding was presently available for the Raitport project. (Tab U-Adm. Record)

DISCUSSION

Judicial review [5] of administrative actions is provided for generally in the Administrative Procedure Act, 5 U.S.C. at §§ 701–706. Section 706 provides, in pertinent part:

"§ 706. Scope of Review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

\* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be —

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."

■ It is at once apparent that neither subsection (2)(E) or (F) is applicable to the instant case. As to the remaining subsections, as observed by the Supreme Court in Citizens to Preserve

5. In the Opinion on the motion for preliminary injunction, I ruled that the ETIP decision was subject to judicial review. 378 F.Supp. 380, 385.

Overton Park v. Volpe, 401 U.S. 402, 413–414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971):

"In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements. 5 U.S.C. §§ 706(2)(A), (B), (C), (D) . . . ."

This requires inquiry and decision by the court as to whether the agency acted within the scope of its authority; whether it observed necessary procedural requirements; and whether the action finaly taken was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the standard set forth in § 706(2)(A).

In the instant case, Raitport's complaint raises the question whether ETIP has misinterpreted its mandate and is therefore operating outside its jurisdiction. This contention is based on Raitport's view that ETIP's role is to provide direct financing to small firms as a means to encourage research and development. The agency, on the other hand, has interpreted its mandate to require it to use its limited funds and resources to seek *ways and means* to promote private investment in small entrepreneurial firm research and development, rather than to actually make or finance the investments itself. In the opinion denying Raitport's motion for preliminary injunction, I ruled that the agency's interpretation was permissible in light of the statutory authority of the Bureau of Standards and the statements of purpose made by President Nixon at the time of the formation of ETIP, consequently the agency was acting within its authority. 378 F.Supp. 380, 387.

■■ The inquiry into whether the agency observed necessary procedural requirements is extremely limited in the absence of any statutory requirement for a hearing. The administrative record clearly establishes that Raitport was afforded full opportunity to present his proposal and such supporting material as he desired. There is no basis in the record for a finding of a denial of necessary procedural requirements.

The remaining inquiry is whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." In discussing § 706(2)(A) in *Overton*, the Supreme Court cited with approval McBee v. Bomar, 296 F.2d 235, 237 (6th Cir. 1961); In re Josephson, 218 F.2d 174, 182 (1st Cir. 1954), and Wong *Wing Hang v. Immigration and Naturalization Service*, 360 F.2d 715, 719 (2d Cir. 1966). *Josephson*, quoted in *McBee*, defined the term "abuse of discretion," as it related to *judicial* action in these terms:

". . . when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. One is reminded of the 'clearly erroneous' standard in Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C." 218 F.2d 182.

*Wong Wing Hang* noted the *Josephson* formulation for judicial action, but set forth the more restrictive definition of "abuse of discretion" in administrative matters to be if the agency action

"were made without a rational explanation, inextricably departed. from established policies, or rested on an impermissible basis . . . ." 360 F.2d at 719.

■ Tested by either of the standards cited with approval in *Overton*, the record reveals ample grounds for ETIP's refusal to approve Raitport's proposal. First, the agency was warranted in concluding that the direct financing nature of the proposal was inconsistent with its mandate. Second, even if the USIBC proposal had been of the type encompassed within its scope of operation, the high cost and long

project life were independent rational bases for the exercise of the agency's judgment.

██ It is apparent from the foregoing discussion that there is no basis in the present record to overturn the agency's action. There is, however, a potential issue which prevents grant of summary judgment at this time. Raitport has charged that, in defiance of the mandate to discover methods to encourage investment in small business research and development, ETIP has deliberately set about to block small business investment in order to protect monopolistic, presumably large business, firms from competition. That contention, if proved, could well establish that the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." At the present time there is no support in the record for Raitport's charge, indeed the evidence is all to the contrary. Mr. Penn, Deputy Director of Operations for ETIP testified on cross-examination at the preliminary injunction hearing that the agency pursued an even handed policy of aiding all small businesses and that Raitport's proposal was carefully considered before it was rejected. (T 47–49) In an affidavit filed on September 3, 1974, long after the hearing, Raitport attempted to counter Penn's testimony, but without alleging any facts to negate that testimony. Ordinarily a countervailing affidavit which fails to state facts is not sufficient to prevent entry of summary judgment, but because Raitport is proceeding *pro se,* and because there is a possibility, however remote, that further discovery may furnish some factual support for the charge, see Toebelman v. Missouri-Kansas Pipe Line Co., 130 F.2d 1016, 1022 (3d Cir. 1942), out of an abundance of caution I will withhold action at this time. I will afford Raitport a further period of time in which to attempt to develop, by discovery or otherwise, a "material issue of fact" for trial as to whether ETIP's refusal to approve his proposal resulted from a deliberate policy to frustrate its mandate to encourage investment in small business research and development.