Robert Frederick TAYLOR,
Petitioner-Appellant,

v.

UNITED STATES PAROLE COMMIS-
SION, et al., Respondents-Appellees.

No. 83–5542.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 22, 1984.

Decided May 22, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 5, 1984

Eldon L. Webb, Federal Public Defender, Lexington, Ky., Allen W. Holbrook (argued), Morehead, Ky., for petitioner-appellant.

Louis DeFalaise, U.S. Atty., Fred A. Stine, Peter Davenport, Asst. U.S. Attys. (argued), Lexington, Ky., for respondents-appellees.

Before KENNEDY and CONTIE, Circuit Judges, and COOK, District Judge.*

CONTIE, Circuit Judge.

█ A parole is the conditional release of a convict before the expiration of his term, subject to the continuing supervision of the appropriate public authority and to return to imprisonment if the parolee violates a condition of parole. In this appeal, we must determine whether the United States Parole Commission presented sufficient evidence to justify its finding that the petitioner violated a condition of his parole by engaging in new criminal conduct. We hold that the Parole Commission did not present sufficient evidence to justify this finding and thus we reverse the district court.

In May 1976, Taylor was sentenced to a ten-year prison term by the United States District Court for the Southern District of Ohio after being convicted of interstate transportation of falsely made securities and mail fraud. 18 U.S.C. §§ 2314, 1341 and 1342. On August 14, 1979, he was released from the Cope Residential Center in Dayton, Ohio and placed on parole. On February 26, 1981, Taylor was arrested in Richmond, Indiana and charged with forgery and theft by deception. The following day, the Parole Commission issued a parole violator warrant in which Taylor was charged with (1) leaving the Southern District of Ohio without proper authorization, (2) failing to report a change of residence, and (3) falsifying monthly written reports. The aforementioned criminal charges were not included as a basis for issuing this warrant. The warrant was later executed against Taylor while he was in the Wayne County Jail in Richmond, Indiana.

At petitioner's preliminary interview, the petitioner admitted that he committed each of the three violations. Thereafter, the Parole Commission notified the petitioner that it had probable cause to believe that the petitioner had violated the conditions of his parole. The petitioner was then trans-ferred to the Federal Correctional Institution at Ashland, Kentucky for a parole revocation hearing. This hearing resulted in a finding by the two-member hearing panel that the petitioner had committed the three administrative parole violations as charged in the parole violation warrant. The hearing panel also referred to petitioner's arrest, but indicated that "[w]e have no circumstances of the forgery ..." The panel ultimately deferred their imposition of sanctions until they had received "additional information regarding [petitioner's] status as an absconder" and "official verification of the disposition of the forgery charges."

On April 15, 1982, all criminal charges against Taylor were dismissed on motion by the state prosecutor. The next day, the Parole Commission issued a supplemental parole violator warrant in which Taylor was charged with committing forgery and theft by deception while on parole. This charge was based upon a letter written by Probation Officer Frank Hall, Jr. of Muncie, Indiana. The letter, dated June 15, 1981, reads as follows:

Dear Bill:

Reference your telephone call on June 10, 1981, pertaining to the above-mentioned violator and the fact that he is incarcerated at the Wayne County Jail in Richmond, Indiana.

Please be informed that Mr. Taylor was arrested on or about February 26, 1981, in the company of Barbara Waters, DOB: February 15, 1950, 810 North Gettysburg, Dayton, Ohio; Goddess Harrison, DOB: May 15, 1957, 1003 South Euclid, Dayton, Ohio, and Minor J. Martin, DOB: June 20, 1951, SSN: 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, Dayton, Ohio. According to the Richmond City Police Department investigative reports, which this officer read with the permission of Captain James Heiger, Detective Division, Mr. Taylor, as principal, opened a savings account at First National Bank of Richmond, Indiana, using the

---

* The Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michi-gan, sitting by designation.

construction firm of P & F Construction, 1225 East Main Street, Richmond, Indiana. The account was opened on a check of $4,500.00 from a firm in Springfield, Ohio. Within a three day span the defendant, using Barbara Waters as his secretary, transferred funds from the savings account to the checking account on several different occasions. At one point he purchased an automobile from a local car dealer for approximately $1,000.00. A bank official became suspicious of the numerous transactions occurring within the three day period and telephonically contacted the firm in Ohio to ascertain the validity of the initial deposited check. The firm verified that the check was not from their company and was therefore forged.

Richmond City Police Department picked up Mr. Taylor along with Barbara Waters as they were attempting to transact more business with an additional forged check. The Richmond Police Department checked the 1225 East Main Street address which was non-existent and verified the company's phone number as belonging to the Richmond City Bus Depot pay phone.

Mr. Taylor is currently being housed at the Wayne County Jail in Richmond, Indiana with a federal parole violation detainer being placed against him. No trial date has been officially set in his case as pre-trial plea bargaining is currently in progress. He will eventually appear in Wayne County Superior Court # 2, Docket No. S2/81/1166–CR for Forgery and Theft by Deception. Captain James Heiger will notify this officer as to any developments in this case.

Sincerely,

Frank D. Hall, Jr.

U.S. Probation Officer

The hearing panel held a second revocation hearing on May 13, 1982. When the petitioner was confronted with Hall's letter, the hearing panel reported that the petitioner denied all wrongdoing. Following this hearing, the panel reaffirmed its prior finding that the petitioner had committed three administrative parole violations. The panel also ruled that there was insufficient evidence that the petitioner had engaged in criminal conduct while on parole. The panel recommended that Taylor's parole be revoked, that he be given credit for his street time from his date of release until November 15, 1980, and that the petitioner be given a presumptive re-parole date of July 15, 1982.

The Regional Commission, however, "modifie[d]" the hearing panel's recommendation by finding that the information contained in Hall's letter justified a finding that Taylor had engaged in new criminal conduct. Upon application of the appropriate guidelines for parole eligibility, Taylor's presumptive re-parole date was set back from July 15, 1982 to February 26, 1983.[1] This decision was affirmed at both the regional and national levels of the Parole Commission.

In July 1982, Taylor commenced this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he contended that the Parole Commission's finding of new criminal conduct was not supported by sufficient evidence.[2] The district court referred the case to a magistrate who, after an evidentiary hearing, found that the Parole Commission's finding of new criminal conduct was adequately supported by Hall's letter. Accordingly, the magistrate recommended that Taylor's petition be denied. The district court adopted this recommendation and dismissed the case. Taylor appeals.

---

**1.** Since petitioner's February 1983 presumptive re-parole date has already passed, the panel was initially concerned that the case might now be moot. The parties have since informed the court that the petitioner is still incarcerated and that his presumptive re-parole date is now June 15, 1984.

**2.** Although Taylor is a federal prisoner, he does not attack any facet of his original sentence and thus he must seek relief under 28 U.S.C. § 2241 rather than 28 U.S.C. § 2255.

The petitioner does not contest the Parole Commission's finding that he committed three administrative parole violations. He does contend, however, that the Commission's finding of new criminal conduct was not supported by sufficient evidence. The petitioner requests that his presumptive parole date be revised to eliminate the Regional Commissioner's additional sanctions and that he be released from prison immediately, subject to parole supervision.

■ We acknowledge at the outset that our standard of review in this case is quite limited. The Parole Commission is "vested with the broadest discretion consistent with due process to act upon reliable evidence in revoking parole." *United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161, 1163 (2d Cir.1970). Under 18 U.S.C. § 4214(d), the Parole Commission may revoke an inmate's parole only upon a finding by a preponderance of the evidence that the parolee has violated a condition of his parole. Our review, however, is limited to determining whether the Parole Commission abused its discretion in making this finding. 18 U.S.C. § 4218(d). The abuse of discretion standard has been characterized in this circuit as follows:

"Abuse of discretion" is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.

*Balani v. Immigration and Naturalization Service*, 669 F.2d 1157, 1160 (6th Cir. 1982); *McBee v. Bomar*, 296 F.2d 235, 237 (6th Cir.1961).

■ We also acknowledge that a parole revocation hearing is not part of a criminal proceeding and is instead an administrative procedure to determine whether a parolee should be deprived of his con-

ditional liberty for failure to observe special parole conditions. *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972). In this context, it is well settled that the Commission may consider hearsay evidence which is reasonably reliable in reaching its decision. *Gagnon v. Scarpelli*, 411 U.S. 778, 783 n. 5, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. at 489, 92 S.Ct. at 2604. Moreover, the Parole Commission may find a parole violation based upon its own finding of new criminal conduct even if (1) the parolee is later acquitted of all charges arising from the same conduct, *Steinberg v. Police Court of Albany, New York*, 610 F.2d 449, 451–52 (6th Cir.1979) (dictum), (2) all criminal charges arising from the same conduct are dismissed prior to trial, *Robinson v. Benson*, 570 F.2d 920, 923 (10th Cir.1978), or (3) the parolee's criminal conviction is subsequently overturned. *Mack v. McCune*, 551 F.2d 251, 254 (10th Cir.1977). *See also* 28 C.F.R. § 2.21(b)(1) (1983). In this case, it is undisputed that the petitioner was arrested for forgery and theft by deception and that these charges were dismissed prior to trial. It is also undisputed that the Parole Commission's finding of new criminal conduct was based entirely upon Probation Officer Hall's letter. The issue, therefore, is whether the Parole Commission abused its discretion by ruling that this single piece of hearsay evidence established by a preponderance of the evidence that the petitioner had engaged in new criminal conduct. After careful consideration, we conclude that the Parole Commission abused its discretion in this case.

■ We agree with the government that Hall's letter was admissible and that it was properly considered by the Parole Commission. Our concern in this case is with the paucity of reliable evidence of petitioner's criminal conduct and not with the hearsay nature of the evidence which was presented.[3] A finding of criminal conduct based

---

**3.** Contrary to the dissent's assertion the "[t]he majority would apparently have been satisfied with the reliability of the hearsay evidence had

the Commission had the Richmond City Police Department investigative reports", we express no opinion on whether the Parole Commission

solely upon a probation officer's summary of an arrest report is but a step away from a finding of criminal conduct based solely upon evidence of a parolee's arrest with no account of the underlying circumstances. *Cf. Marshall v. Garrison,* 659 F.2d 440, 446 (4th Cir.1981) ("short of some relevant, reasonably reliable evidence of the commission of another crime, the district court may not permit the Parole Commission to deny or postpone the granting of parole on the basis of a prisoner's commission of other crimes.").

The lack of reliable evidence of petitioner's criminal conduct was clearly a point of concern for the initial hearing panel, who specifically asked for "official verification of the disposition of the forgery charges." The regional office did respond to this inquiry, but provided no additional evidence of petitioner's criminal conduct. Thereafter, the hearing panel specifically referred to the lack of credible evidence to support the charge of new criminal conduct by ruling that it did not "have enough evidence such as the actual check the subject wrote or any witness statements or any other evidence which would indicate a preponderance of evidence that the subject did, in fact, commit this crime on parole." This finding sets forth in persuasive fashion the insufficient evidentiary basis for the new criminal conduct charge. The Commission did not subpoena the arresting or investigating officer to appear at the hearing. The Commission did not produce a copy of the indictment or information, sworn witness statements, copies of the forged checks, the arrest report itself, or any other documentary evidence. Although we recognize that Congress has committed parole revocation decisions to the discretion of the Parole Commission, we are firmly convinced that, on the facts of this case, the Parole Commission abused its discretion by making a finding of new criminal conduct based solely on a probation officer's summary of an arrest report. In light of our holding, we do not address

would have abused its discretion by making a finding of new criminal conduct based solely on

petitioner's other argument that the Parole Commission abused its discretion by failing to follow certain federal regulations or its own administrative procedures in rendering its decision.

Accordingly, the judgment of the district court is REVERSED.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

Because I would find that the hearsay evidence on which the Parole Commission relied is reasonably reliable, I would affirm the District Court. The majority would apparently have been satisfied with the reliability of the hearsay evidence had the Commission had the Richmond City Police Department investigative reports. I suggest that a trained probation officer's summaries of those reports are equally reliable.

I recognize that

with every increased level of hearsay there is a corresponding decrease in reliability. Every level of hearsay provides another possibility that the facts were inaccurately reported by the declarant, either intentionally or unintentionally, or misunderstood by the person to whom the statement was made.

*Comments,* "Hearsay Under the Proposed Federal Rules: A Discretionary Approach," 15 Wayne L.Rev. 1077, 1231 (1969). However, in the instant case there is very little likelihood that any of these possibilities occurred.

The probation officer is a trained professional who spends a significant portion of his or her time preparing presentence reports in which the officer summarizes all kinds of data including that relating to prior criminal involvement of an accused. Trial judges rely on those summaries every day in imposing sentence. Probation officers are fully aware of the important use to which their reports are put. They are trained to be accurate. The information summarized by probation officer Hall is

a copy of the actual investigative report.

straightforward and uncomplicated. That Hall misunderstood what was in the investigative files is extremely unlikely. That he intentionally misreported what he read is not even suggested.

The number of steps of hearsay does not necessarily make a statement unreliable. A statement, such as a military command, may be repeated through several command levels and yet maintain its original form. That is because persons at each step are aware of the importance of accuracy. It is the circumstance under which each repetition of hearsay is made which determines its reliability.

The letter before the Parole Commission contains a considerable amount of corroborating detail concerning the circumstances leading to the forgery and theft charges against Taylor. Allowing the Commission to rely on a detailed summary would not likely lead to findings of criminal conduct based solely on evidence that an arrest had occurred, as suggested by the majority.

Accordingly, because the probation officer's summary was entitled to be accepted as a reliable summary of the reports I would find the Parole Commission had reasonably reliable evidence on which to base its action. Petitioner had the opportunity to respond to the accusation that he had forged a check, deposited it in a bank, and drawn on the account created by the forged check. Petitioner does not appear to have claimed that the probation officers incorrectly summarized the investigative files but rather that the check situation was a problem having to do with his construction and remodeling business. While I agree that it would be preferable for the Parole Commission to have the actual investigative files of the Richmond Police Department, such files are ordinarily not available without a subpoena.

Accordingly, I respectfully dissent.