Donald R. WOODY, Petitioner,

v.

Joseph B. BOGAN, et al., Respondent.

Civ. A. No. 93 CV–72251–DT.

United States District Court,
E.D. Michigan, S.D.

Sept. 21, 1993.

Donald R. Woody, in pro per.

Rafael M. Gonzalez, U.S. Atty., Detroit, MI, for respondent.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

Petitioner, Donald R. Woody ("Petitioner"), presently confined at the Federal Correctional Institution in Milan, Michigan ("FCI–Milan"), has filed this *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges both the United States Parole Commission's actions taken upon revoking his parole and the legality of his parole revocation.

Petitioner contends that the Parole Commission violated its own regulations by improperly determining his offense behavior severity rating ("OBSR") and his salient factor score ("SFS").[1] Petitioner also contends that he was denied due process when the Parole

---

1. These two factors are used together to deter-    mine the guideline range within which newly

Commission failed to call his wife as a witness on his behalf.[2] Petitioner seeks either an order vacating the presumptive parole date set by the Parole Commission and granting him another hearing, or an order vacating the Parole Commission's presumptive parole date and ordering that the Parole Commission set a new presumptive parole release date based upon the OBSR and the SFS to which Petitioner claims entitlement.

Petitioner has appealed his parole revocation, his OBSR, and his SFS to the National Appeals Board, which affirmed the decision of the Parole Commission. See Respondent's Ex. 17, Notice of Action on Appeal of the National Appeals Board dated January 25, 1993.

## I. FACTUAL BACKGROUND

On July 24, 1987, Petitioner was sentenced to five years imprisonment for bank fraud. He was paroled from this sentence on May 11, 1989. While on parole, Petitioner was arrested and indicted for six counts of forgery in the Franklin County Ohio Common Pleas Court. According to the police report, Petitioner wrote six fraudulent checks totaling $8,000.00 on a closed account. He deposited the checks in his account. He withdrew some of the funds using an automatic teller machine card. Petitioner pleaded "guilty to one count of misdemeanor forgery and was sentenced to a six month jail term." Respondent's Brief at 2.

The Parole Commission delayed serving its violator warrant upon Petitioner until disposition of the forgery case. On June 2, 1992, Petitioner was arrested on a parole violator warrant issued by the Parole Commission. The Parole Commission was informed of Petitioner's guilty plea and sentence, as well as information that Petitioner had satisfied a restitution obligation of $2,004.00, and supplementary information regarding Petitioner's conviction.

Petitioner's parole revocation hearing was scheduled for August 11, 1992, at FCI–Ashland, Kentucky. A continuance was granted to October 22, 1992, to allow Petitioner's appointed attorney sufficient time to prepare for the hearing. The hearing was conducted on October 22, 1992. The panel found that Petitioner violated his parole by passing six bad checks valued at "some $5600 totally." Respondent's Ex. 14, Revocation Hearing Summary at 1.[3] The hearing panel based its findings on United State Probation Officer "Ankrom's letters dated April 5, 1991, September 10, 1991, December 16, 1991, January 24, 1992, and May 5, 1992, as well as Franklin County Ohio Police Report No. 5580." Respondent's Ex. 14, Revocation Hearing Summary at 1. The panel also stated that it relied upon "Franklin County Ohio Police Report No. 5580 as well as your conviction in the Franklin County Ohio Common Pleas Court." Respondent's Ex. 14, Revocation Hearing Summary at 2. The panel recom-

---

sentenced prisoners are usually imprisoned before release on parole and parole violators are usually reimprisoned after violating parole.

"The Parole Commission is mandated by statute to promulgate guidelines for the exercise of its parole power.... The guidelines establish a presumptive parole date by rating the severity of an offender's crime and his salient factor score, which is the risk that he will violate parole. See C.F.R. § 2.20 (1989). An offender's salient factor score, or parole prognosis, is determined by considering the following factors: the number of prior convictions, from none to four or more; prior commitments of more than thirty days, from none to three or more; the offender's age at the time of committing the current offense; whether the offender had been released from commitment for three years prior to the current offense; whether the offender was on probation, parole, or in confinement; and the offender's history of drug dependence." *Montoya v. U.S. Parole Commission*, 908 F.2d 635, 637 (10th Cir. 1990).

**2.** Petitioner raises these three issues in the following manner:

1) The Commission determined Petitioner's offense behavior to be category three (3) premised upon unverified contested facts.

2) The Commission erroneously calculated Petitioner's salient factor score at three.

3) The Commission failed to or improperly considered information relative to both Petitioner's offense behavior and criminal history, as well as failure to call favorable witness as required by regulation, statute, and procedural due process.

Petition at pages 4, 6, 7.

**3.** This document also states that Petitioner's "parole violation behavior involved the writing of at least 6 checks with a total of in excess of $5,000 involved." Respondent's Ex. 14, Revocation Hearing Summary at 2.

mended that Petitioner's parole be revoked, that none of the time he spent on parole be credited against his sentence, and that his imprisonment be continued until the expiration of his sentence.

The Parole Commission revoked Petitioner's parole on the basis of his new criminal conduct. The Parole Commission's Notice of Action states that Petitioner had committed "Forgery (6 counts)—passing bad checks[.] Basis: Franklin County, Ohio Police Report No. 5580 and your conviction in the Franklin County Common Pleas Court." Respondent's Ex. 15, Notice of Action at 2. This document also states that Petitioner's new criminal conduct in violation of his parole "involved check forgery of $6,700." Respondent's Ex. 15, Notice of Action at 2.

The Commission classified Petitioner's new criminal conduct as "category Three severity because it involved check forgery of $6,700." Respondent's Ex. 15, Notice of Action at 2.

The Commission also found that Petitioner's "salient factor score (SFS-81) is 3. You have been in federal confinement as a result of your violation behavior for a total of 3 months. Reparole guidelines indicate a range of 24–32 months to be served before re-release.[4] After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted." Respondent's Ex. 15, Notice of Action at 2.[5]

## II. PETITIONER'S OFFENSE BEHAVIOR SEVERITY RATING

### A. *SIGNIFICANCE OF THE ISSUE AND POSITIONS OF THE PARTIES*

The United States Parole Commission Offense Behavior Severity Index rates "Theft, Forgery, Fraud,[ ] and Related Offenses" according to the value of the property involved. 28 C.F.R. § 2.20, Subchapter D—Theft and Related Offenses. "If the value of the property is at least $2,000, but less than $40,000," the offense behavior is Category Three. "If the value of the property is less than $2,000," the offense behavior is Category One. 28 C.F.R. § 2.20, Subchapter D 331(d) and (e).

Petitioner's salient factor score was 3. A salient factor score of 3 indicates a poor parole prognosis. The Parole Commission's guidelines establish that the presumptive parole release dates for an offender whose SFS is 3 are 12–16 months for a Category One offense and 24–32 months for a Category Three offense. 28 C.F.R. § 2.20.[6] The Parole Commission ordered that Petitioner serve between 24 and 32 months before being reparoled.

Petitioner contends that his offense behavior severity rating was improperly determined to be Category Three because the value of the property involved in his criminal behavior was less than $2,000.00. Petitioner notes that although he was indicted for six counts of forgery involving checks totaling $8,000.00, he pleaded guilty only to a single count of forging a $400.00 check.[7]

Petitioner also notes that the trial court ordered that he pay restitution of $2,004.00 to the victim bank. Petitioner has submitted a letter from a bank official indicating that $27.56 of this total was for ordinary bank services, not repayment of fraudulent withdrawals. *See* Petitioner's Appendix H. Therefore, Petitioner contends that the value of the property involved in his parole violation behavior was established as $2,004.06

---

**4.** The same guidelines are used both for newly sentenced offenders and after parole revocations.

**5.** Because Petitioner had approximately 25 months to serve at the time his parole violator warrant was served, the hearing panel recommended that he remained imprisoned until his mandatory release date, i.e., until he serves his entire 5 year sentence.

**6.** Petitioner also challenges his salient factor score. However, for purposes of this discussion

of his offense behavior, a salient factor score of 3 will be assumed, to isolate the significance of the dispute over his correct offense behavior severity determination.

**7.** Petitioner pleaded guilty to Count 1 of the indictment. The court ordered that *"nolle prosequi* be entered for Counts 2, 3, 4, and 5 of the Indictment." Entry of Judgment of the Franklin County Common Pleas Court. No reference was made to Count 6 of the Indictment.

minus $27.56, or $1,976.44. Because this amount is less than $2,000.00, Petitioner argues that his proper offense behavior severity rating is Category One.

Respondent replies that neither the fact that Petitioner pleaded guilty to only one count of forgery, nor the amount of restitution he was ordered to pay, is "determinative of the loss he actually caused or could have caused through his fraudulent behavior and does not restrict the Commission's discretion in rating the severity of his crime under the guidelines." Respondent's Brief at 4. Respondent cites *Levesque v. Brennan*, 864 F.2d 515, 519 (7th Cir.1988) for support.

Respondent argues furthermore that the Parole Commission is entitled to set the "value the property" involved in Petitioner's offense behavior based on "the amount of money placed at risk of loss." Respondent's Brief at 4. Respondent cites as authority "57 Fed.Reg. 41393, to be codified at 28 C.F.R. § 2.20, Chapter Thirteen General Notes and Definitions, Subchapter B (September 10, 1992)." Respondent's Brief at 4; *See* Respondent's Ex. 18.

### B. *STANDARD OF REVIEW AND SUB-QUESTIONS PRESENTED*

■ This Court's standard of review in this case is limited. Allegations of erroneous factual findings in offense behavior severity determinations are challenges to substantive decisions made by the Parole Commission and are consigned to unreviewable discretion, insulated from judicial review. *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir.1984). At least one court has held that there need only be some evidence which establishes a rational basis for the Parole Commission's decision, for that decision to be upheld. *Kramer v. Jenkins*, 803 F.2d 896, 901 (7th Cir.1986). However, on habeas review, the legality of the Parole Commission's actions may be scrutinized. *Farkas*, 744 F.2d at 38–39. Examples of illegality which are reviewable by this Court include statutory, regulatory, or constitutional violations by the Parole Commission and misapplied parole guidelines. *Bowen v. U.S. Parole Commission*, 805 F.2d 885, 888 (9th Cir.1986).

Furthermore:

a parole revocation hearing is not a part of a criminal proceeding and is instead an administrative procedure to determine whether a parolee should be deprived of his conditional liberty for failure to observe special parole conditions. In this context, it is well settled that the Commission may consider hearsay evidence which is reasonably reliable in reaching its decision. Moreover, the Parole Commission may find a parole violation based upon its own finding of new criminal conduct even if (1) the parolee is later acquitted of all charges arising from the same conduct, (2) all criminal charges arising from the same conduct are dismissed prior to trial, or (3) the parolee's criminal conviction is subsequently overturned.

*Taylor v. United States Parole Commission*, 734 F.2d 1152, 1155 (6th Cir.1984) (citations omitted). The Parole Commission also is entitled to consider unsubstantiated "allegations of criminal activity for which the prisoner has not even been charged." *Hackett v. U.S. Parole Commission*, 851 F.2d 127, 131 (6th Cir.1987) (internal quotation and citation omitted).

■ Nonetheless, a parole revocation based on a finding of criminal activity may be reversed if the Parole Commission's decision was not based on sufficient reliable evidence. "[T]he Parole Commission may revoke an inmate's parole only upon a finding by a preponderance of the evidence that the parolee has violated a condition of his parole." *Taylor v. United States Parole Commission*, 734 F.2d at 1154. In *Taylor*, the only evidence of new criminal conduct presented to the hearing panel was a probation officer's letter summarizing the police investigator's arrest report. The *Taylor* court ruled that "on the facts of this case, the Parole Commission abused its discretion by making a finding of new criminal conduct based solely on a probation officer's summary of an arrest report." *Taylor v. United States Parole Commission*, 734 F.2d at 1156.

The case at bar, therefore, presents two sub-issues regarding Petitioner's offense behavior severity. First, whether there was sufficient evidence for the Parole Commis-

sion to conclude that Petitioner forged checks in the amount of $5,000.00. Second, whether the Parole Commission followed its own regulation regarding the determination of the value of the property involved in Petitioner's offense behavior. That is, was it proper to consider the value of the checks, drawn on a closed account, then deposited into Petitioner's account, as part of the value of the property involved, despite the fact that Petitioner did not withdraw all of the funds?

### C. SUFFICIENCY OF THE EVIDENCE

In *Taylor* the Sixth Circuit held that "the Parole Commission abused its discretion by making a finding of new criminal conduct based solely on a probation officer's summary of an arrest report." The *Taylor* court noted that "[t]he Commission did not subpoena the arresting or investigating officer to appear at the hearing. The Commission did not produce a copy of the indictment or information, sworn witness statements, copies of the forged checks, the arrest report itself, or any other documentary evidence." *Taylor v. United States Parole Commission*, 734 F.2d at 1156.

In *Taylor* the Regional Commission of the Parole Commission made a finding of new criminal conduct where the parolee had denied all criminal conduct and all criminal charges against the parolee were dismissed on motion by the state prosecutor. Thus, the *Taylor* case presented a different factual scenario than the case at bar. Here, whether Petitioner committed new criminal conduct is not in issue. Petitioner pleaded guilty to committing new criminal conduct. In issue is the extent of Petitioner's new criminal conduct, in particular, what the value is of the property involved in Petitioner's offense behavior.

■ Matters of offense behavior severity may have great significance as to the length of the guideline presumptive parole release term. Depending upon the value of the property, a theft or related offense may range from Category One to Category Six Offense Behavior. This means that depending upon the value of the property, an offender with a poor parole prognosis may face a

presumptive term of imprisonment ranging from 12 to 16 months (Category One) to 78 to 100 months (Category Six). A determination having such a great potential impact on a parolee's liberty must be based upon constitutionally sufficient evidence. This Court concludes that the rule and reasoning of *Taylor* requires that constitutionally sufficient evidence must support an offense behavior severity ruling or that determination constitutes an abuse of discretion which must be reversed. *See also, United States v. Stephenson*, 928 F.2d 728, 731–33 (6th Cir.1991) (applying this standard in a revocation of supervised release proceeding).

■ The Parole Commission based its decision upon letters of United States Probation Officer Ankrom, the Franklin County Ohio Police Report, and Petitioner's conviction in the Franklin County Ohio Common Pleas Court. No witnesses appeared at the revocation hearing. There is no indication that sworn witness statements or copies of the forged checks were produced at the revocation hearing.

In her letter of April 5, 1991, United States Probation Officer Ankrom related the following:

On March 6, 1991, a complaint was filed by Jeff Miller of the Huntington National Bank, in the Franklin County, Ohio, Municipal Court, Case Number 5580/91, against Donald Woody on a charge of Passing Bad Checks. According to the complaint, on or about November 19, 1990, Woody allegedly issued a check in the amount of $2000 to the Huntington National Bank. This check was drawn on the Bank Ohio National Bank, account of Deloris Woody. On March 6, 1991, a warrant was issued for the defendant's arrest.

The client reported to this office on April 3, 1991. As he exited the building, he was arrested by the Columbus Police Department for his active warrant in this case.

Enclosed please find a copy of the Columbus Police Department investigative report of this matter. According to Detective Bennett, the client deposited five checks totalling $8,000 into his Huntington Bank account. Woody used his automatic bank

machine card to withdraw the funds before they returned from Bank Ohio due to a closed account.

When Woody reported to this office on April 3, 1991, he denied being involved in any illegal activity, or experiencing any problems. However, after he was arrested by the Columbus Police, he contacted this officer and stated that he was attempting to work out this situation on his own. Enclosed please find a certified copy of the client's criminal affidavit and a copy of the police investigation.

Letter of United States Probation Officer Ankrom date April 5, 1991, at pages 1–2.

Thus, Ankrom's letter to the Parole Commission not only informed the hearing panel that Woody was accused of forging checks totalling $8,000.00; the letter also informed the hearing panel that Woody lied to Ankrom about his involvement in criminal activity. He denied involvement in criminal activity on the same day he was arrested. He would later plead guilty to one count of forgery based on that same arrest.

The police report lists the check numbers and their amounts Woody was accused of fraudulently depositing at the Huntington Bank.[8] The police report also details that the checks Woody used in his forgery were checks from his wife's account at Bank Ohio. Expert examination of the checks indicated that Woody (i.e., Petitioner) wrote all of the bad checks. The police report is, in a sense, only an accusation, or collection of allegations against Woody. However, they are detailed allegations.

Moreover, Woody pleaded guilty to one count of passing a bad check. This was an admission of criminal conduct of the same type alleged in greater amount in the police report and the indictment. This fundamentally distinguishes the present case from *Taylor*, where the parolee denied all criminal conduct. In *Stephenson*, the prisoner on su-

pervised release also denied all criminal conduct.[9]

■ Furthermore, although Woody pleaded guilty only to Count One of the Indictment, passing a bad $400.00 check, Woody himself informed the Parole Commission that the trial court had set restitution at $2,004.00. This did not constitute a ruling by the trial court that Woody *only* wrote that amount of bad checks or *only* wrongfully deprived the bank of that amount of money. In addition to the amount of the victim's loss, restitution orders commonly are based upon such circumstances as the "defendants employment status, earning ability, financial resources, wilfulness of failure to pay and other special circumstances." *Levesque v. Brennan*, 864 F.2d 515, 519 (7th Cir.1988). As the familiar proverbs teach, you can't get blood from a rock and something is better than nothing. Restitution orders routinely recognize these truths and do not attempt to equal the full extent of the victim's loss.

Moreover, this restitution order did provide a clear statement by the trial judge that she did not believe that Woody only passed one bad $400.00 check. Restitution normally is not *more* than the victim's total loss.

The Parole Commission did not rely solely on Ankrom's letters. Nor did the Parole Commission rely solely upon these letters and the police report. The Parole Commission also was aware of Woody's guilty plea to one count of the multi-count indictment and the trial judge's act of ordering restitution five times greater than the amount of the one bad check Woody pleaded guilty to passing.

Woody's guilty plea to one count of passing a bad check, his false denial of criminal activity to United States Probation Officer Ankrom, the trial judge's restitution order, and both the police report and indictment accusing Woody in detail of having passed six bad checks totalling $8,000.00, together constitute

---

8. Respondent has submitted a copy of the indictment as an exhibit. The same checks totalling $8000 are listed in the indictment and the police report. The check numbers and amounts are identical.

9. *Taylor* is further distinguished by the fact that in *Taylor* the hearing panel—that Parole Com-

mission body which actually heard the evidence against the parolee—ruled that there was insufficient evidence of new criminal conduct. It was the Regional Commission which overturned the hearing panel's ruling and found that the parolee had committed new criminal conduct. *Taylor*, 734 F.2d at 1154.

evidence of the extent of his new criminal behavior substantially stronger than the evidence found lacking in *Taylor*. This Court concludes that the Parole Commission did not abuse its discretion when it found that Petitioner had written "at least 6 [bad] checks with a total of in excess of $5,000 involved." Revocation Hearing Summary at page 2.

### D. *VALUE OF THE VICTIM BANK'S PROPERTY INVOLVED*

It is reported in the Federal Register that "[t]he U.S. Parole Commission is amending its guidelines to improve upon the definition of the term 'value of the property,' which is used in the guidelines for rating cases of theft, forgery, and fraud. The purpose of the amended rule is to clarify how these offenses are to be rated on the guidelines when the victim has recovered his money or property following detection of the crime, and when the victim was unlawfully exposed to risk of loss without actual loss having been sustained." 57 Fed.Reg. 41393 (September 10, 1992).[10]

The amended version of the definition value of the property involved in an offense reads as follows:

> The 'value of property' is determined by estimating the actual or potential replacement cost to the victim. The 'actual replacement cost' is the value or money permanently lost to the victim through theft/forgery/fraud. The 'potential replacement cost' refers to the total loss the offender specifically intended to cause by theft/forgery/fraud, or the total amount of the victim's money or property unlawfully exposed to risk of loss through theft/for-

gery/fraud not withstanding subsequent recovery by the victim. The highest of these three values is the value to be used in rating the offense on the guidelines.

57 Fed.Reg. 41393 (September 10, 1992).

■ The amendment is an agency final rule. Therefore it has "the full force and effect of law" on and after its effective date. *Chrysler Corp. v. Brown*, 441 U.S. 281, 302, 99 S.Ct. 1705, 1718, 60 L.Ed.2d 208 (1979). The effective date of this amendment was October 13, 1992. Petitioner's parole revocation hearing was held on October 22, 1992. Consequently, the Parole Commission was entitled to apply its new definition of the value of the property involved in the offense to Petitioner's offense behavior.[11]

■ The Parole Commission's amended definition of the value of property involved in theft and related offenses clearly requires the Commission to consider the value of the victim's potential loss, or stated differently, the value of the victim's property which was placed at risk by the offender. This Court has sustained the hearing panel's finding that Petitioner deposited in the Huntington Bank fraudulent checks valued at greater than $5,000.00. The checks were drawn upon the Bank of Ohio which returned the checks marked account closed. Petitioner used an ATM card to withdraw some funds from the Huntington Bank. Columbus Division of Police, Criminal Investigation Summary.

It is unclear precisely how much cash Petitioner actually withdrew from the Huntington Bank against credits granted for fraudulent checks. However, under the new definition of value of the property, Petitioner clear-

---

10. Prior to the amendment of the definition of the value of property, the definition stated that "'[v]alue of property' refers to the estimated replacement cost to the victim." 28 C.F.R. § 2.20 Subchapter B—Definitions 20 (July 1, 1992).

11. The Parole Commission's amended rule regarding value of property in theft and related crimes became effective after Petitioner committed his parole violation behavior. Applying this amended rule to parole violation offense behavior committed before the effective date of the amended rule does not violate the *Ex Post Facto* Clause, however. Petitioner has not been sub-

jected to additional punishment for his 1987 bank fraud conviction. Any increase in his offense behavior severity rating which may be attributable to applying the amended definition of the value of the property involved in the offense only lengthened his incarceration for violating parole; it did not increase his 1987 bank fraud conviction sentence. Petitioner's original sentence imposed for his 1987 bank fraud conviction was only conditionally suspended by his parole. The Parole Commission has not increased Petitioner's punishment for that conviction. *United States v. Myers*, 237 F.Supp. 682, 684 (E.D.Pa. 1965).

ly "exposed [the victim bank] to risk of loss" of all of the value of the forged checks he deposited. Therefore, this Court concludes that the Parole Commission properly found that the potential replacement cost to the victim was in excess of $5,000.00.

### E. CONCLUSION

The Parole Commission's finding that Petitioner forged checks valued in excess of more than $5,000.00 was supported by constitutionally sufficient evidence. The Parole Commission's finding that Petitioner's deposit of these fraudulent checks exposed the victim bank to risk of loss (or a potential replacement cost) in excess of $5,000.00 was correct under the Parole Commission's amended definition of the value of the property involved in the offense. A theft or related offense such as forgery or fraud in which the value of the property involved is at least $2,000.00, but less than $40,000.00, is a Category Three offense.

Therefore, this Court concludes that the Parole Commission properly determined that Petitioner's Offense Behavior Severity Rating was Category Three for the parole revocation offense behavior at issue in the case at bar.

### III. PETITIONER'S SALIENT FACTOR SCORE

■ Petitioner contends that the Parole Commission improperly scored item A of his salient factor score by including a juvenile adjudication, which was a status offense. Item A is concerned with the number of prior criminal convictions or adjudications, both adult and juvenile. Juvenile offenses which are merely status offenses are not to be counted. The parole violation offense in issue here is not to be counted, even if, as here, it resulted in a conviction. A total of four or more countable convictions or adjudications results in a score of zero (0) for item A. Zero is the lowest possible score.

Petitioner received a zero on item A. His revocation prehearing assessment indicates that he had 7 prior convictions. (This total did not include his conviction by guilty plea to Count One of the Franklin County bad check indictment). One of Petitioner's 7 pri-

or convictions was a juvenile offense. *See* Revocation Prehearing Assessment at 2, Respondent's Ex. 13. However, this juvenile conviction was for petty larceny which is not a status offense.

There is no indication that the Parole Commission *relied upon* a juvenile status offense in determining item A of Petitioner's salient factor score. *Referring to* or *listing* a juvenile status offense in Parole Commission materials is not improper, so long as any such status offense is not *counted* as a prior conviction or adjudication in determining the salient factor score. Four prior countable convictions results in an Item A score of zero. Petitioner had 7 countable prior convictions. This Court concludes that the Parole Commission correctly found that Petitioner's score for Item A of the salient factor score was zero and that his overall salient factor score was 3, resulting in a poor parole prognosis.

### IV. PETITIONER'S DUE PROCESS HEARING CLAIM

■ Petitioner contends that he was deprived of due process of law because the Parole Commission did not call his wife as a witness at his revocation hearing. Petitioner correctly asserts that accused parole violators have the right to call witnesses on their behalf. Witnesses must be *allowed* either to show that the parolee "did not violate the conditions [of his parole], or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Morrissey v. Brewer,* 408 U.S. 471, 488, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1971).

■ The Parole Revocation Hearing Summary indicates that no witnesses were present. However, the Parole Commission is not generally required to ensure the appearance of witnesses for the parolee. The Parole Commission may subpoena a witness, if the parolee demonstrates that a witness, whose appearance is necessary, will not voluntarily appear to testify or provide a written substitute for her testimony. 28 C.F.R. § 2.51(a)(2). However, there is nothing in the record to indicate that Petitioner requested that the Parole Commission subpoe-

na his wife as a witness, or that he demonstrated that while her testimony was needed to adjudicate his case, she would not voluntarily appear.

Petitioner does not allege that his wife appeared at his revocation hearing, but was not allowed to testify. Nor does he allege that she offered a written statement which the Parole Commission refused to accept or consider. Nor has Petitioner attempted to demonstrate that he was prejudiced by the absence of testimony from his wife regarding his parole violation, mitigation matters, or both. Petitioner simply asserts that "[f]or whatever reason, the Comm'n failed to give the petitioner meaningful opportunity to call his witness." Petition at 8.

There is no indication in the record of the hearing that Petitioner's wife sought to testify or offer a written statement in lieu of testifying. Petitioner was represented by attorney Gerald B. Reams his revocation hearing. There is no mention in the hearing record of any objection to the absence of Petitioner's wife at the hearing. Attorney Reams submitted a memorandum in support of Petitioner's appeal of the Parole Commission's revocation decision. This memorandum challenges Petitioner's offense behavior severity rating and the Commission's decision not to grant Petitioner credit for time served on parole. The memorandum does not, however, make any mention whatsoever of the absence of Petitioner's wife as a witness at his hearing. Nor does it appear that Petitioner raised this issue in his appeal to the National Appeals Board.

This Court concludes that Petitioner has failed to demonstrate that the Parole Commission was responsible for the absence of his wife at his revocation hearing. This Court also concludes that Petitioner has failed to demonstrate that he was arguably prejudiced by his wife's absence at that hearing. Therefore, this Court concludes Petitioner is not entitled to habeas relief on the basis of this due process claim.

## V. CONCLUSION

The Parole Commission's determination that Petitioner's offense behavior was Category Three is supported by constitutionally sufficient evidence. The Parole Commission's determination of the value of the property involved in the offense accords with the Parole Commission's applicable amended definition of the value of the property involved in the revocation behavior. The Parole Commission's determination that Petitioner's item A score was zero and his salient factor score was 3 is correct. Petitioner has not shown that the Parole Commission prevented his wife from testifying at his revocation hearing, or that he was prejudiced by the absence of her testimony.

Accordingly, IT IS ORDERED that the petition for writ of habeas corpus is DENIED.

### JUDGMENT

The above entitled matter having come before the Court on a Petition for Writ of Habeas Corpus, Honorable LAWRENCE P. ZATKOFF, a United States District Judge, presiding, and in accordance with the Memorandum Opinion and Order entered on September 21, 1993.

IT IS ORDERED AND ADJUDGED that the Petition for Writ of Habeas Corpus be, and the same hereby is, DENIED.

Dated at Detroit, Michigan, this 21st, day of September, 1993.