# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 23, 2010

## STATE OF TENNESSEE v. STEVEN F. SMITH

**Appeal from the Criminal Court for Sullivan County**
**No. S54,177    R. Jerry Beck, Judge**

**No. E2009-02354-CCA-R3-CD - Filed June 23, 2011**

The Defendant, Steven F. Smith, appeals as of right from the Sullivan County Criminal Court's revocation of probation and order of incarceration. The Defendant contends that the trial court erred in rejecting his defense of insanity. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined. NORMA MCGEE OGLE, J., filed a separate concurring opinion.

David G. Mullins, Bristol, Tennessee, for the appellant, Steven F. Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; H. Greeley Wells, Jr., District Attorney General; and Janine M. Myatt, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In November 2007, the Defendant was indicted on one count of arson, a Class C felony. See Tenn. Code Ann. § 39-14-301. On April 24, 2008, the Defendant pled guilty to one count of attempted arson. Pursuant to the plea agreement, the Defendant was classified as a Range II, multiple offender and sentenced to five years. The trial court ordered that six months of the sentence be served in confinement with the remainder to be served on supervised probation. One of the conditions of the Defendant's probation was that he "be compliant with mental health treatment through . . . provider[s] as directed by the probation officer." On October 8, 2008, a violation warrant was issued against the Defendant alleging the Defendant had failed "to take certain psychotropic medications" as directed by Lake

Shore Mental Health Hospital. A second violation warrant was issued on October 23, 2008, alleging that the Defendant had committed simple assault and had engaged in "assaultive, abusive, threatening, or intimidating behavior" toward his mother. Prior to the revocation hearing, at the request of defense counsel, the trial court ordered a mental health evaluation for the Defendant.

At the revocation hearing, the State began by presenting evidence regarding the first violation warrant. Penny M. Tester, a nurse at the Sullivan County Jail and health administrator for the Sullivan County Sheriff's Department, testified that in October 2008, the Defendant was prescribed several different antipsychotic medications. Ms. Tester testified that during the month of October 2008 the Defendant "had several weeks . . . of not wanting to take the medication." Ms. Tester further testified that the Defendant had been diagnosed with paranoid schizophrenia and that without his medication he had "behavior issues" and "hear[d] voices, external and internal stimuli." According to Ms. Tester, the Defendant would also "become[] angry," hurt himself, and could not be reasoned with when he stopped taking his medication. Lori Ann Fennell was employed by Frontier Health as a mental health liaison for Sullivan County in October 2008. Ms. Fennell testified that she was "aware that Lakeshore had prescribed medications" for the Defendant and that "he had not been taking his medication." Ms. Fennell further testified that she "advise[d] [the Defendant] that it was in his best interest to take the medication."

The State then presented evidence regarding the second violation warrant. Deputy Roy W. Harrison, Jr. of the Sullivan County Sheriff's Department testified that he was working at the Sullivan County Jail on October 9, 2008. On that day, the Defendant was on suicide watch when Deputy Harrison was transporting him to meet with the mental health staff. Deputy Harrison and the Defendant were in the back of an elevator when the Defendant grabbed another inmate and "put him in a choke hold." Deputy Harrison and another officer separated the two inmates. Deputy Harrison testified that the other inmate had done nothing to provoke the Defendant prior to the attack. Susan Emrick Poore testified that she was the Defendant's mother and that on October 18, 2008, she received a phone call from the Defendant. During that phone call the Defendant said, "If I ever see you again you're f-----g dead." Ms. Poore testified that this scared her "because [she had] never quite heard anything like that."

Following the State's proof, defense counsel entered into evidence a letter from Frontier Health. The letter stated that Dr. Diane L. Whitehead had performed a mental health evaluation on the Defendant in anticipation of the revocation hearing. Dr. Whitehead concluded that the Defendant was competent to participate in the revocation hearing. Dr. Whitehead then opined that "at the time of the commission of the acts constituting the alleged

offense,"[1] the Defendant was "suffering from a severe mental disease or defect which prevented him from appreciating the nature or wrongfulness of such acts." The letter further stated that the Defendant "was psychotic and required an inpatient hospitalization" at the time of the alleged probation violation. Dr. Whitehead concluded that "the information suggest[ed] that the [D]efendant was suffering from a severe mental disease or defect and therefore did lack[] the capacity to act with intent."

The trial court concluded that the State had proven by a preponderance of the evidence that the Defendant had violated the terms and conditions of his probation. However, the trial court also concluded that the Defendant had proven by a preponderance of the evidence that at the time of the violations "he suffer[ed] from a mental condition that would prevent him . . . from understanding the nature of his conduct."[2] The trial court also stated that the "State offered no proof contrary" to the Defendant's showing of insanity. The trial court reasoned that the outcome of the case would depend upon whether insanity was a defense to an alleged probation violation. Relying on this court's opinions in State v. Glen R. Gregory, No. 89-157-III, 1990 WL 20806 (Tenn. Crim. App. March 8, 1990) (Wade J.), and State v. Clarence Stevens, No. 03C01-9412-CR-00442, 1995 WL 256704 (Tenn. Crim. App. May 3, 1995), the trial court concluded that insanity is not a defense to a probation violation, but instead is considered as a mitigating factor. The trial court reasoned that the Defendant could have "been helped if he had taken his medications," but that he did not and that "the public could be harmed if [it] mitigated his sentence." Accordingly, the trial court concluded "the mitigation is not sufficient to diminish the punishment" and ordered the Defendant to serve the remainder of his five-year sentence in confinement.

## ANALYSIS

The Defendant contends that the trial court erred in concluding that the defense of insanity does not apply to probation violations. The Defendant, relying on this court's opinion in State v. Marsha Karen Yates, contends that the proper standard when a defendant "raises a statutory defense in response to the underlying criminal offense in a probation revocation hearing" is that the State must "prove by a preponderance of [the] evidence that the statutory defense does not apply." No. E2003-01900-CCA-R3-CD, 2004 WL 1467636,

---

[1]At the beginning of the evaluation, Dr. Whitehead stated that the Defendant was referred to her for a "determination of his mental condition at the time of the alleged offense . . . the charge of Assault [sic]."

[2]At the revocation hearing, the trial court ruled that Dr. Whitehead's conclusion that the Defendant was suffering from a severe mental disease or defect at the time of the assault on October 9, 2008, applied to the events alleged in both of the violation warrants. However, it is clear from the first paragraph of Dr. Whitehead's letter that her determination applied only to the matters covered in the second violation warrant and not to those covered in the first violation warrant.

at *5 (Tenn. Crim. App. June 30, 2004). Therefore, the Defendant contends the trial court's decision must be reversed because the State presented no evidence that the Defendant was mentally competent at the time of the probation violations. The State responds that the trial court was correct in ruling that insanity is not a defense to a probation violation. The State responds that the trial court properly considered the Defendant's mental condition as a mitigating factor but determined that the mitigation was "not sufficient to diminish the punishment." Accordingly, the State concludes, the trial court did not abuse its discretion in ordering the Defendant to serve the remainder of his sentence in confinement.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). A trial court is not required to find that a violation of probation occurred beyond a reasonable doubt. Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). "The evidence need only show [that the trial court] has exercised conscientious judgment in making the decision rather than acting arbitrarily." Id. In reviewing the trial court's finding, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious, rather than an arbitrary, judgment. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). In order to conclude that the trial court abused its discretion, there must be no substantial evidence to support the determination of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Such a finding "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). Upon concluding that a defendant has violated the conditions of his release, the trial court may revoke the probationary sentence and either "commence the execution of the judgment as originally entered" or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. § 40-35-311(e).

This court has repeatedly agreed with the majority view of other jurisdictions that in the context of a probation violation, insanity is not a defense but "may only be considered as mitigating evidence." State v. Lee Bell, Jr., No. W1999-01906-CCA-R3-CD, 1999 WL 1532152, at *2 (Tenn. Crim. App. Dec. 20, 1999); see State v. Jeffrey D. Hunter, No. 01C01-9608-CC-00334, 1997 WL 672650, at *3 (Tenn. Crim. App. Oct. 30, 1997) (Wade, J.), aff'd, 1 S.W.3d 643 (Tenn. 1999); Stevens, 1995 WL 256704 at *1; Gregory, 1990 WL 20806 at *3; see also Caroll J. Miller, Annotation, Probation Revocation: Insanity as Defense, 56 A.L.R. 4th 1178 (1987). However, a panel of this court in Yates concluded that the defense of necessity was available in a probation violation hearing. 2004 WL 1467636 at *5. In Yates, the court did not address this court's line of cases declaring that insanity is not a defense to a probation violation. Instead, the court relied on the reasoning of courts from the minority jurisdictions that recognize insanity as a defense to a probation violation. Id. The

court concluded that "a defendant may raise a statutory defense during a revocation hearing to the extent that the violation of probation is based upon an allegation that the defendant has committed a criminal offense." Id. The court reasoned that to do otherwise "would permit a defendant's probation to be revoked and confinement imposed based upon the commission of an offense that would otherwise be barred from prosecution by the existence of a statutory defense." Id.

The defendant, at a revocation proceeding, is not entitled to all of the rights associated with a criminal trial but is entitled to some quantum of due process. State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993). As part of this due process, the defendant is entitled to the right of confrontation and cross-examination, as well as the right to introduce evidence. Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973); Wade, 863 S.W.2d at 408. We agree with the court's decision in Yates that "[i]mplicit within these rights is the 'opportunity to show that [the defendant] did not violate the conditions [of probation], [or] that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition.'" 2004 WL 1467636 at *4 (quoting Black v. Romano, 471 U.S. 606, 612 (1985)) (alterations in original). However, the purpose of a revocation hearing is not to determine "whether the defendant should be held responsible for the acts with which he is charged" but is instead to determine "whether the alternatives to incarceration which have been made available to a defendant remain viable." People ex rel Gallagher v. Dist. Court of Eighteenth Judicial Dist., 591 P.2d 1015, 1017 (Colo. 1978); see also State v. O'Meal, 569 P.2d 249, 251 (Ariz. 1977) (stating that the concern of trial court at revocation hearing is whether law has been obeyed, not whether it has been culpably broken); People v. Breaux, 161 Cal. Rptr. 653, 656 (Cal. Ct. App. 1980) (stating that the purpose of revocation hearing is not to determine legal responsibility but to protect the public and further rehabilitation). To that extent, a trial court may revoke an alternative sentence based upon its "own finding of new criminal conduct" even if the defendant is later acquitted of the charges or the charges are dismissed or overturned. United States v. Stephenson, 928 F.2d 728, 732 (6th Cir. 1991) (quoting Taylor v. United States Parole Comm'n, 734 F.2d 1152, 1155 (6th Cir. 1984)). Furthermore, a defendant's constitutional rights are protected by allowing him to show, if he violated the conditions of his probation, "that circumstances in mitigation suggest the violation warrants action other than revocation." State v. Johnson, 514 P.2d 1073, 1076 (Wash. Ct. App. 1973). Accordingly, we conclude that the trial court correctly determined that insanity is not a defense to an alleged probation violation and that the trial court properly considered the Defendant's mental state as mitigation evidence. There is nothing in the record to suggest that the trial court abused its discretion in concluding that "the mitigation [was] not sufficient to diminish the punishment" and ordering the Defendant to serve the remainder of his five-year sentence in confinement.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE